**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DISTRICT COURT NO. 23-10171**
Honorable Laurie J. Michelson
Mag Judge Elizabeth A.Stafford

IN RE:
    **CHRISTOPHER D. WYMAN**
         *Debtor(s),*

**BANK CASE NO. 12-32264**
**CHAPTER 7**
**HON: D. S. OPPERMAN**

_____ \

**MICHAEL E. TINDALL,**
        Appellant,

v.

**SAMUEL D. SWEET,**
        Appellee.

_____ \

## AMENDED NOTICE OF APPEAL TO DISTRICT COURT
### *[AMENDMENTS IN ITALICS]*

*Pursuant to E.D.MICH LR 83.50(d)(3),*[1] *Appellant* MICHAEL E.
TINDALL, (hereinafter "Claimant"), Assignee of all [100%] claims of
BARBARA DUGGAN ($32,240.34), and a party in interest holding a
secured attorney lien ($34,100.00/$21,869.33) against the proceeds of the
Realty (hereinafter collectively "allowed secured claim"), hereby appeal to
the United States District Court for the Eastern District of Michigan,
pursuant to 28 USC 158(a)(1), from the following final Orders of the
Bankruptcy Court:

---

[1] *"(3) With the exception of papers required under Fed. R. Bankr. P. 8009,
after the district clerk gives notice of the date on which the appeal was
docketed, all papers must bear a civil case number in addition to the
bankruptcy case number(s) and must be filed with the district clerk."*

<u>390</u>  (10 pgs) Opinion Regarding Trustee's Motion Fixing Approved
Fees For Special Counsel and Claimants 11 U.S.C. § 725 Motion and
Brief to Pay Allowed Secured Lien (RE: related document(s)<u>348</u>
Generic Motion filed by Attorney Samuel D. Sweet, Trustee Samuel D.
Sweet, <u>355</u> Motion to Pay filed by Creditor Barbara Duggan, Interested
Party Michael E. Tindall). (Desjarlais, Kevin) (Entered: 01/06/2023)

<u>391</u> (1 pg)  Order Partially Granting Trustee's Motion Fixing
Approved Fees For Special Counsel and Claimant's 11 U.S.C. § 725
Motion to Pay Allowed Secured Lien (RE: related document(s)<u>390</u>
Memorandum Opinion and Order). (Desjarlais, Kevin) (Entered:
01/06/2023)

*attached to original* as Exhibits 1 and 2;and, including the following

previously interlocutory orders upon which the above final orders are based.

285 (10 pgs) Opinion Regarding Application for Payment of Pre-Approved
Attorney Fees of Special Counsel to Trustee Pursuant to 11 U.S.C. 328(a)
(RE:related document(s)270 Application for Compensation filed by Special
Counsel Michael Tindall). Telephonic Status Conference for 10/9/2019 at
01:30 PM for 270, (clm) (Entered: 09/23/2019)

296 (3 pgs) Order Denying Amended Motion to Modify/Alter/Amend
Opinion/Order on Application for Pre-Approved Attorney Fees of
Special Counsel Pursuant to 11 U.S.C.§ 328(a), Docket No. 285 and for
Amended or Additional Pleadings (Related Doc # 291). (clm) (Entered:
11/06/2019)

324 (7 pgs) Opinion Regarding First and Final Fee Application of Attorney
for Trustee, Samuel D. Sweet. (RE: related document(s)292 Application for
Compensation filed by Attorney Samuel D. Sweet, Trustee Samuel D.
Sweet). (slh) (Entered: 01/28/2020)

325 (1 pg) Order Regarding Opinion of First and Final Fee Application of
Attorney for Trustee, Samuel D. Sweet. (RE: related document(s)324
Memorandum Opinion and Order). (slh) (Entered: 01/28/2020)

344 (4 pgs) Opinion and Order Denying Interested Party Michael Tindall's
Motion to Vacate Order Granting Trustee's Motion for Subordination of Tax

Liens Dated May 6, 2019 (Docket No. 244) (RE: related document(s)328 Motion to Vacate/Set Aside filed by Interested Party Michael E. Tindall). (clm) (Entered: 09/20/2021)

345 (5 pgs) Opinion Allowing Certain Attorney Fees and Costs of Samuel D. Sweet, PLC (RE: related document(s)292 Application for Compensation filed by Attorney Samuel D. Sweet, Trustee Samuel D. Sweet). (clm) (Entered: 01/28/2022)

346 (1 pg) Order Authorizing First and Final Fee Application for Attorneys for Trustee, Samuel D. Sweet, PLC, for Services Rendered November 17, 2014 through October 30, 2019, Specifically Related to Representing the Estate on Cases Pending at the Time of Michael Tindall Disbarment (Related Doc # 292) for Samuel D. Sweet, Fees Awarded: $21800.00, Expenses Awarded: $181.00. (clm) (Entered: 01/28/2022)

*Attached to original as Exhibits 3-9.*

*02/27/2023 452 (1 pg) Order Denying Amended Claimant's FRCP 60(b)(4) Motion to Vacate (RE: related document(s)449 Reply - motions filed by Creditor Michael Tindall, 451 Memorandum Opinion and Order). (nlt) (Entered:02/27/2023)*

*02/27/2023 451 (29 pgs) Opinion Regarding Amended Claimant's FRCP 60(b)(4) Motion to Vacate (RE: related document(s)442 Motion for Sanctions filed by Creditor Michael Tindall). (nlt) (Entered: 02/27/2023)*

*Attached as Exhibits hereto*

## CASE NO. 19-03018 ADV. PROCEEDING

*02/27/2023 131 (1 pg) Order Denying FRCP 59(e) Motion to Modify/Alter/Amend Opinion Regarding Plaintiff's Motion for Summary Judgment (RE: related document(s)125 Motion to Amend filed by Interested Party Michael E. Tindall, 130 Memorandum Opinion and Order). (nlt) (Entered: 02/27/2023)*

*02/27/2023 130 (15 pgs) Opinion Denying FRCP 59(e) Motion to Modify/Alter/Amend Opinion Regarding Plaintiff's Motion for Summary*

*Judgment (RE: related document(s)125 Motion to Amend filed by Interested Party Michael E. Tindall). (nlt) (Entered: 02/27/2023)*

*12/28/2022  119  (1 pg) Order Overruling The Notice Of Unresolved And Outstanding Issues Filed By Michael Tindall (Docket No. 95) (RE: related document(s)95 Notice). (kcm) (Entered: 12/28/2022)*

*12/28/2022  118  (1 pg)  Order Allowing Plaintiff's Amended Affirmative Defenses (Docket No. 93) (RE: related document(s)93 Affirmative Defenses filed by Counter-Defendant Samuel D. Sweet, Plaintiff Samuel D. Sweet). (kcm) (Entered: 12/28/2022)*

*12/28/2022  117  (1 pg)  Order Denying Motion Of Michael Tindall To Strike Amended Affirmative Defenses (Docket No. 99) (Related Doc # 99 Motion). (kcm) (Entered: 12/28/2022)*

*12/28/2022  116   (1 pg)  Order Granting Plaintiff's Motion For Summary Judgment (Docket No. 88) (Related Doc # 88 Motion). (kcm) (Entered: 12/28/2022)*

*12/28/2022  115  (10 pgs)  Opinion Regarding Plaintiff's Motion For Summary Judgment (RE: related document(s)88 Motion for Summary Judgment filed by Counter-Defendant Samuel D. Sweet, Plaintiff Samuel D. Sweet). (kcm) (Entered: 12/28/2022)*

*Attached as Exhibits hereto.*

### CASE NO. 20-03012 ADV. PROCEEDING
*02/27/2023  97  (6 pgs)  Opinion Regarding Notice of Unresolved Issues and Improper Closing of Case (RE: related document(s)92 generic Notice). (nlt) (Entered: 02/27/2023)*

*02/27/2023  98  (1 pg)  Order Denying Notice of Unresolved Issues and Improper Closing of Case (RE: related document(s)92 generic Notice, 97 Memordum  Opinion and Order). (nlt) (Entered: 02/27/2023)*

*Attached as Exhibits hereto.*

The names of all parties to the Order appealed from and the names,

addresses and telephone numbers of their respective attorneys are as follows:

**APPELLANT: MICHAEL E. TINDALL 18530 MACK AVE., STE 430, DETROIT MI 48236, (248) 250-8819**

**APPELLEE: SAMUEL D. SWEET, TRUSTEE, PO BOX 757, ORTONVILLE MI 48462, (248) 236-0985**

Respectfully Submitted,

/S/

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI   48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated:3/ 11/2023

5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DISTRICT COURT NO. 23-10171**
Honorable Laurie J. Michelson
Mag Judge Elizabeth A.Stafford

IN RE:
    **CHRISTOPHER D. WYMAN**
       *Debtor(s),*

    **BANK CASE NO. 12-32264**
    **CHAPTER 7**
    **HON: D. S. OPPERMAN**

_____\

**MICHAEL E. TINDALL,**
        Appellant,
v.

**SAMUEL D. SWEET,**
        Appellee.

_____\

## <u>CERTIFICATE OF SERVICE</u>
### (Modified for PEDUP)

Appellant, in pro per, hereby certifies that

## <u>APPELLANT'S 2ND AMENDED NOTICE/CLAIM OF APPEAL</u>

was submitted for filing through the PEDUP program on _3/11_ , 2023
and will be served on Appellee Trustee Sweet by the Clerk's filing through
the Court's ECF System on the date and at the time so filed by the Clerk.

Respectfully Submitted,

/S/

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI  48236
(248)250-8819
**Direct Email: <u>met@comcast.net</u>**

Dated: _3/11_ /2023

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

                                        Case No. 12-32264-dof

     CHRISTOPHER D. WYMAN,               Chapter 7 Proceeding
          Debtor.                           Hon. Daniel S. Opperman

_____/

SAMUEL D. SWEET,
       Plaintiff/Counter-Defendant,

v.                                   Adversary Proceeding
                                   Case No. 20-03012-dof

BARBARA DUGGAN AND
MICHAEL E. TINDALL,
       Defendants/Counter-Plaintiffs.

_____/

OPINION REGARDING NOTICE OF UNRESOLVED
ISSUES AND IMPROPER CLOSING OF CASE

Introduction

The Clerk of the Court closed this Adversary Proceeding on December 6, 2021 after the Court issued an Opinion and Order Denying Defendant/Counter-Claimant, Michael Tindall's Motion to Modify/Alter/Amend Opinions/Orders dated March 17, 2021. About one year later, Mr. Tindall filed a Notice of Unresolved Issues and Improper Closing of Case, the Plaintiff responded and Mr. Tindall filed a Reply. For the reasons stated in this Opinion, the Court denies the relief sought by Mr. Tindall.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

1

<u>Findings of Fact</u>

This Court does not write on an empty slate in this case.  It issued an Opinion on March 17, 2021 Granting Plaintiff's Motions for Summary Judgment related to his Complaint and the Counter-Complaint filed against him, as well as denying like Motions for Summary Judgment filed by Defendants/Counter-Plaintiffs.  Subsequently, Mr. Tindall filed a Motion to Modify/Alter/Amend these Opinions and Orders.  The Court denied this Motion on September 20, 2021.  That Opinion states:

<u>OPINION AND ORDER DENYING DEFENDANT/COUNTER-CLAIMANT MICHAEL TINDALL'S  MOTION TO MODIFY/ALTER/AMEND OPINIONS/ORDERS DATED MARCH 17, 2021 (DOCKET NO. 85)</u>

On March 17, 2021, the Court entered five Opinions and Orders in this Adversary Proceeding.  To summarize the impact of these decisions:

(1) The Court granted summary judgment to the Plaintiff Trustee, and concluded there is no genuine issue of material fact that the secured claim of Barbara Duggan has been paid in full.  This conclusion was based upon the contract count, which is Count II of Plaintiff Trustee's Adversary Proceeding Complaint.  The Court also denied Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

(2) The  Court granted Plaintiff's and denied Defendant's summary judgment motions, the end result being the dismissal of  Defendant's counter claims against Plaintiff.

Defendant/Counter-Claimant Michael Tindall filed the instant Motion to Modify/Alter/Amend these Opinions and Orders asserting they were based upon "clear 'manifest' errors of law resulting from the 'disregard, misapplication, or failure to recognize/apply controlling precedent.'"  Mr. Tindall bases his Motion on Federal Rule of Civil Procedure 59(e), which is made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 9023.  First, he asserts that this Court must first decide his Motion filed in the Christopher Wyman bankruptcy case, Case No. 12-32264, at Docket No. 328, which is his Motion to vacate the Court's Order granting the Trustee's motion for subordination of tax liens.  Mr. Tindall takes the position that the Opinions and Orders entered on March 17, 2021 depended on the validity of the underlying Order subordinating the tax

2

liens, entered on May 6, 2019 at Docket No. 244 in the Wyman case, and it was error for this Court to proceed in this way.  Second, he asks this Court to declare these Opinions and Orders "void" as non-core matters over which this Court lacks jurisdiction.  Specifically, Mr. Tindall asserts that both the Amended Complaint and Counter Complaint are non-core state law claims involving breach of contract and promissory estoppel as to the Amended Complaint; and breach of fiduciary duty, forfeiture of compensation, false pretense fraud, statutory waste and statutory conversion as to the Counter Complaint.

On June 29, 2021, Mr. Tindall filed a pleading entitled "Suggestion of Subsequently Decided Controlling Authority," citing to decisions from the Sixth Circuit Court of Appeals and the United States Supreme Court.  Mr. Tindall asserts that these decisions support his position that Trustee Sweet lacks Article III standing in this Adversary Proceeding.

The granting of a Rule 59(e) motion "is an extraordinary remedy and should be used sparingly." This is because a motion pursuant to Rule 59(e) "serve[s] the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Pequeno v. Schmidt (In re Pequeno)*, 240 Fed. Appx. 634, 636 (5th Cir. 2007) (internal citations and footnotes omitted). *See also Hansen v. Moore (In re Hansen)*, 368 B.R. 868 (B.A.P. 9th Cir. 2007).

The instant Motion was timely filed.  For the following reasons, the Court finds no basis under Federal Rule of Civil Procedure 59(e)  to modify or declare "void" the March 17, 2021 Opinions and Orders.

The Court first addresses the issue of jurisdictional standing argument raised by Mr. Tindall.  He argues that this Court has not decided a motion challenging this Court's jurisdiction in the bankruptcy case of Christopher Wyman, Case No. 12-32264.   The Court has reviewed the pleading filed by Movant in that case at Docket No. 328, as well as the pleadings connected with such and the only issue of standing raised connected with that Motion is the standing of Mr. Tindall. The Court has entered an order contemporaneous with this Opinion and Order denying Movant's motion in that case, finding that Mr. Tindall lacks the requisite standing to contest the May 6, 2019 Order Subordinating the tax liens.  That determination did not involve a question of jurisdiction to decide that motion; rather, it only impacted Mr. Tindall's right to file such and object to the Order of Subordination.  Even if Mr. Tindall is continuing to dispute the Trustee's standing in this case, for reasons discussed below, this argument continues to fail.

Next, the Court turns to Mr. Tindall's argument that both the Amended Complaint and Counter Complaint involve non-core state law claims, which this Court lacks jurisdiction to decide.  A proceeding is considered "core" only if it "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." *Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992).  "Claims that arise under the

3

Bankruptcy Code or arise in a bankruptcy case are core matters; claims that relate to a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are non-core." *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (internal quotations omitted). While Mr. Tindall denies these are core proceedings, the Court concludes that they are core. Regarding the Amended Complaint, the following subsections of 28 U.S.C. § 157(b)(2) apply to the Trustee's breach of contract and promissory estoppel counts which ultimately seek a determination that a lien on property of the bankruptcy estate has been fully satisfied:

> (A)  matters concerning the administration of the estate;

> (B)  allowance or disallowance of claims against the estate . . . .

> * * * *

> (K)  determinations of the validity, extent, or priority of liens

These subsections support that the Amended Complaint is a core proceeding.

Next the Court turns to the Counter Complaint alleging the Trustee breached of fiduciary duty in various ways, seeking relief against Trustee Sweet individually. The Court concludes it had jurisdiction to decide and grant the Trustee's Motion for Summary Judgment as to the Counter Complaint. The Trustee would normally be entitled to immunity from these claims, and the actions alleged by Mr. Tindall were all directly connected with the carrying out of his duties as the case trustee. While these claims may not directly concern the administration of the bankruptcy estate, it was nevertheless appropriate for this Court to exercise jurisdiction over the Counter Complaint because the issue of the Trustee's immunity from such claims was implicated. *See, e.g., Grant, Konvalinka & Harrison, PC v. Banks et al. (In re McKenzie)*, 716 F.3d 404, 424 (6th Cir. 2013) (bankruptcy court did not abuse its discretion in concluding that "strong possibility" of Trustee being entitled to immunity in claims brought against him in his personal capacity warranted retaining jurisdiction).

Finally, the Court has considered the two decisions Mr. Tindall directed this Court to consider through his most recent pleading. As to the submission of these, it appears that Mr. Tindall is resurrecting his argument that the Trustee lacks standing to pursue this action. For the reasons previously stated in its March 17, 2021 Opinion and Order Denying Mr. Tindall's Motion to Dismiss (Docket No. 81), the Court finds  no manifest error of fact or law or newly discovered evidence as to its conclusion that the Trustee has both statutory and Article III standing to bring this action. The first case, *Bearden et al. v. Ballad Health et al.*, 967 F.3d 513 (6th Cir. 2020), is distinguishable because while a plaintiff generally may lack standing in the absence of sufficient injury in fact, the Court has concluded that

standing may also exist by statute or under Article III of the Constitution. The Plaintiff Trustee's standing is derived by both statute and Article III, making the injury in fact argument moot. In the second case, the United States Supreme Court in *Transunion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) also reiterated the fundamental principal of standing--that a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." Again, Plaintiff Trustee has bases for standing independent of injury in fact, making these cases inapplicable to the instant case.

WHEREFORE, IT IS HEREBY ORDERED that Mr. Tindall's above-titled Motion is DENIED.

The Clerk of the Court then closed this case.

On November 2, 2022, Mr. Tindall filed a Notice of Unresolved Issues and Improper Closing of Case. He argues this Court does not have jurisdiction to enter a final judgment and that this adversary proceeding should not have been closed.

<u>Applicable Authorities</u>

Rule 8002. Time for Filing Notice of Appeal

(a) In General.

   (1) *Fourteen-Day Period*. Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.

. . .

   (5) *Entry Defined.*

   (A)   A judgment, order, or decree is entered for purposes of this Rule 8002(a):

     (i)   when it is entered in the docket under Rule 5003(a), or

     (ii)   if Rule 7058 applies and Rule 58(a) F.R.Civ.P. requires a separate document, when the judgment, order, or decree is entered in the docket under Rule 5003(a) and when the earlier of these events occurs:

        • The judgment, order, or decree is set out in a separate document; or

        • 150 days have run from entry of the judgment, order, or

5

decree in the docket under Rule 5003(a).

(B) A failure to set out a judgment, order, or decree in a separate document when required by Rule 58(a) F.R.Civ.P. does not affect the validity of an appeal from that judgment, order, or decree.

<u>Analysis</u>

Bankruptcy Rule of Procedure 8002 governs the timing of appeals and generally allows a party to appeal fourteen days after entry of the judgment, order, or decree.  That time may be extended.

Under any reading of the Rule, Mr. Tindall's styled Notice is untimely.  This Court ruled as early as March 17, 2021 that he was not entitled to summary judgment and, by virtue of granting Plaintiff's Motions for Summary Judgment, relief should be granted against him.  Likewise, the Court addressed his Motion to Modify/Alter/Amend the March 17, 2021 Opinions and Orders by way of an Opinion and Order dated September 20, 2021.  This latest Opinion and Order addressed all issues before the Court and this Adversary Proceeding was closed on December 6, 2021.

The time to contest the Court's Opinions and Orders has passed.  Mr. Tindall's instant action of labelling his pleading as a Notice does not change the nature of his relief.  He seeks to question and reverse decisions of this Court.  While he may have the right to do so, that avenue is to appeal, which is unavailable to him because time has passed.

For these reasons, the Court DENIES the relief requested by Mr. Tindall and enters an Order consistent with this Opinion.

**Not for Publication**

**Signed on February 27, 2023**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

                Case No. 12-32264-dof

      CHRISTOPHER D. WYMAN,      Chapter 7 Proceeding
          Debtor.               Hon. Daniel S. Opperman
_____/
SAMUEL D. SWEET,
      Plaintiff/Counter-Defendant,

v.                          Adversary Proceeding
                          Case No. 20-03012-dof
BARBARA DUGGAN AND
MICHAEL E. TINDALL,
      Defendants/Counter-Plaintiffs.
_____/

ORDER DENYING NOTICE OF UNRESOLVED
ISSUES AND IMPROPER CLOSING OF CASE

For the reasons stated in this Court's Opinion Regarding Notice of Unresolved Issues and

Improper Closing of Case entered contemporaneously with this Order;

IT IS HEREBY ORDERED that the relief requested by Michael E. Tindall in his Notice

of Unresolved Issues and Improper Closing of Case is DENIED.

**Signed on February 27, 2023**



           **/s/ Daniel S. Opperman**
           **Daniel S. Opperman**
           **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

             CHRISTOPHER D. WYMAN,
                  Debtor.

Case No. 12-32264-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

_____/

SAMUEL D. SWEET,
        Plaintiff/Counter-Defendant,

v.

Adversary Proceeding
Case No. 19-03018-dof

BARBARA DUGGAN,
        Defendant/Counter-Plaintiff.

_____/

OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Introduction

Plaintiff, Samuel D. Sweet, seeks summary judgment as to the counter-claims of Defendant, Michael Tindall. Mr. Tindall responded to this motion and the Court heard oral arguments on November 8, 2022. Subsequently, Mr. Tindall filed various pleadings with this Court that touch on issues raised in this adversary proceeding and at oral argument. For the reasons stated in this Opinion, the Court grants Plaintiff's Motion for Summary Judgment.

Background

Plaintiff originally objected to the secured status of the claim of Barbara Duggan. Because the relief sought was more appropriate in an adversary proceeding, this proceeding was opened. A portion of Ms. Duggan's claim was assigned to Mr. Tindall. Mr. Tindall filed responses and a counter-claim, and Plaintiff filed a response. Subsequently, Mr. Tindall and Ms. Duggan filed a Motion to Withdraw Reference. The District Court for the Eastern District of Michigan heard oral

arguments and issued an Order Denying Motion to Withdraw Reference (#1) and Administratively

Closing Case on August 22, 2019.  This Order states:

> On March 18, 2019, Sweet commenced an Adversary Proceeding against Defendants Tindall and Duggan (collectively, "Defendants") to avoid the enforcement of Duggan's Judgment Lien against the real property. (Adversary No. 19-03018, Doc # 1) In the Adversary Proceeding, Sweet alleged that Duggan failed to renew her Judgment Lien five years from the original filing date pursuant to Mich. Comp. Laws § 600.2809. (*Id*.) On March 22, 2019, Defendants filed a Counter Complaint, which included three counterclaims, including: Declaratory Judgment (Claim I); Breach of Fiduciary Duty and Waste under 11 U.S.C. § 704 (Claim II);1 and Abandonment under 11 U.S.C. § 554(b) (Claim III). (Adversary No. 19-03018, Doc # 11) Claims I and III are now moot because the real property has been sold. (Doc # 1, Pg ID 3)

> On June 13, 2019, Defendants filed a Motion to Withdraw Reference pursuant to 28 U.S.C. § 157(d). (Doc # 1) According to Defendants, the circumstances of this case "create both grounds for mandatory withdrawal of the reference, and, 'cause' for permissive withdrawal of the reference." (*Id*. at Pg ID 4) In addition to their request to withdraw the reference, Defendants request that the Court stay all further proceedings in the Bankruptcy Court and expedite the hearing on this Motion. (*Id*. at 5.) A Response was filed on June 17, 2019, and a Reply was filed on June 19, 2019. (Doc # 3; Doc # 5) A hearing was held on this matter on July 10, 2019.

> . . .

> **A. Mandatory Withdrawal**

> Defendants request that the Court exercise its authority to withdraw the reference pursuant to 28 U.S.C. § 157(d). Defendants argue that Claim II pertains to a non-core state law tort claim, which not only entitles them to a jury trial, but also prevents the Bankruptcy Court from having the subject matter jurisdiction necessary to hear their Claim. Without going into any detail, Defendants contend that the courts in *Stern v. Marshall*, 564 U.S. 462 (2011), *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), and *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), found that claims such as theirs constitute non-core proceedings.

> In response, Sweet argues that Defendants' Claim is a core matter because it concerns and affects the administration of the bankruptcy estate that is at issue. Sweet claims that courts have considered this issue, and ruled that a lawsuit against a trustee is a core matter. Sweet's contention is premised on his belief that he could not have breached a fiduciary duty, because under Michigan law, a trustee only has a duty to the bankruptcy estate and not to each individual creditor. Further, Sweet attempts to distinguish the instant case from *Waldman* and *Stern*, and asserts that

those cases involved a debtor and a creditor, as opposed to this case, which includes a trustee and creditors.

The determinative issue in this case is whether a Breach of Fiduciary Duty and Waste claim under 11 U.S.C. § 704 constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2). Congress has provided a non-exhaustive list of "core" matters in § 157(b)(2), including: 1) matters concerning the administration of the estate; 2) counterclaims by the estate against persons filing claims against the estate; 3) proceedings to determine, avoid, or recover preferences and fraudulent conveyances; 4) orders to turn over property of the estate; and 5) confirmation of plans. 28 U.S.C. § 157(b)(2). A bankruptcy court may hear and determine a core proceeding, unless a party demands a jury trial. 28 U.S.C. § 157(b)(1), (e). Absent consent of the parties, the bankruptcy judges will conduct hearings and file proposed findings of fact and conclusions of law on non-core proceedings. E.D. Mich. LR 83.50(a)(3).

The Court finds that Claim II clearly falls under the *core proceedings* category because it is premised on Sweet's potential liability for violating 11 U.S.C. § 704. § 157(b)(2)(A) straightforwardly indicates that core proceedings include "matters concerning the administration of the estate." Claim II is based on Defendants' argument that Sweet failed "to protect and preserve property of the Bankruptcy Estate for the benefit of the creditors." (Adversary No. 19-03018, Doc # 11) Defendants' Claim directly relates to the manner in which Sweet allegedly carried out his obligations while *administering the estate. See* 28 U.S.C. § 157(b)(2).

Defendants have argued that their Claim is a state law tort claim, which therefore would require the Court to determine that it should be deemed a non-core proceeding. The Court is unconvinced by such an argument. In Defendants' Counter Complaint, they determined that they would bring forward a Breach of Fiduciary Duty and Waste claim pursuant to 11 U.S.C. § 704. There was no mention of any state law violations. The Court will not allow Defendants to now make such an argument because it is convenient for them. Claim II is based on federal law and the Court will assess Defendants' Claim as such for purposes of the instant Motion.

Defendants additionally contend that the courts in *Stern*, *Waldman*, and *Arkison* found that claims similar to theirs were non-core proceedings. The difference between those three cases and the instant case however, is that those cases each assessed *state law claims*. As mentioned, Claim II is not premised on state law and therefore, those cases are not analogous to the present case.

Since the proceeding here is a *core proceeding*, the Court must assess whether Defendants are entitled to mandatory withdrawal. There are three conditions in the statute which must be met to withdraw a case or proceeding under the mandatory withdrawal provision in § 157(d): 1) the movant is a party; 2) the motion is timely; and 3) the resolution of the proceeding before the Bankruptcy

Court requires consideration of both Title 11 and another federal law regulating organizations or activities affecting interstate commerce. *In re Baldwin–United Corp.*, 47 B.R. 898, 899 (S.D.Ohio 1984).

Here, the Court finds that Defendants have not satisfied all three prongs of the mandatory withdrawal analysis. The first prong has been met as to Duggan because she is a party to the underlying bankruptcy action. The second prong has been satisfied. Courts have determined that something will be considered *timely* if it is done at the "first reasonable opportunity." *In re Baldwin–United Corporation*, 57 B.R. 751, 753 (S.D.Ohio 1985). Courts have further explained that timeliness requires that action be taken without undue delay and must be evaluated in the context of the specific situation. *Id*. The Adversary Proceeding commenced on March 18, 2019, and the present Motion was filed on June 13, 2019. The Court determines that a period of approximately three months may be considered *timely* even though there does not appear to be a reason why Defendants could not have filed the instant Motion sooner, and Defendants have not explained why they waited almost three months to file their Motion. Finally, the Court finds that the third prong has *not* been met because the only law at issue is 11 U.S.C. § 704. No other "federal law regulating organizations or activities affecting interstate commerce" has been referenced by Defendants in relation to Claim II and they have not argued otherwise.

**B. Discretionary Withdrawal**

Defendants argue that the Court should alternatively exercise its authority pursuant to 28 U.S.C. § 157(d)'s discretionary withdrawal provision. Regarding discretionary withdrawal, it appears that Defendants insist that the Court should use its discretionary authority to withdraw the reference since the Bankruptcy Court relocated from Flint, Michigan to Bay City, Michigan. Defendants seemingly argue that this relocation will make it more difficult for them and their counsel to appear at subsequent proceedings. Defendants assert that this case should be heard in this Court because it would be less burdensome for them and their counsel to travel to Detroit, Michigan as opposed to Bay City, Michigan. The Court notes that Sweet did not address Defendants' argument pertaining to a potential discretionary withdrawal.

Section 157(d) grants the district court the discretion to withdraw the reference for "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." In considering a withdrawal motion, "whether a proceeding is core or non-core…is a central question." *In re Appalachian Fuels, LLC*, 472 B.R. 731, 2012 WL 1344984 at *4 (E.D.Ky.2012). A district court should first evaluate whether the claim is core or non-core and then turn to the other factors. *Id*. Courts have considered the following factors to determine whether cause exists to withdraw the reference: 1) judicial economy; 2) uniformity in Bankruptcy administration; 3) reducing forum shopping and confusion; 4) fostering economical use of the debtor's and creditor's resources; 5)

expediting the bankruptcy process; and 6) the presence of a jury demand. *Id*. at *3. Other courts in this circuit have found that discretionary withdrawal of reference requires "compelling" cause. *Id*.

The Court finds that the justification offered by Defendants is not *compelling*. While the Court understands that the relocation of the Bankruptcy Court might be a hardship for Defendants as it relates to their travel to future proceedings, the Court does not believe that it will impose a burden on Defendants that is significant enough for the Court to exercise its discretion to withdraw the reference.

### C. Jury Trial

Defendants additionally assert that they are entitled to a jury trial before this Court and "have not and do not consent to the Bankruptcy Court hearing and/or entering Judgment on Count II." (Doc # 1, Pg ID 4) Parties may consent to a jury trial before the Bankruptcy Court if *all parties* so agree. 28 U.S.C. § 157(e) states:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e). Considering that Defendants do not consent to a jury trial in the Bankruptcy Court, but still demand a jury trial, the referral of the case may be withdrawn by the District Court. However, Defendants have not shown that they are entitled to a jury trial as to Claim II. As argued by Sweet, as a trustee, he has no duty to the creditors, only to the bankruptcy estate under Michigan law. The Court denies Defendants' request for a jury trial at this time. If it is determined that Defendants are entitled to a jury trial before this Court, the Court finds that in the interest of judicial economy, the Bankruptcy Court should complete the pre-trial portion of this case. Other courts have similarly found this approach to be appropriate in these instances. *See In re Collins & Aikman Corp.*, No. 05-55927, 2006 WL 6584164, at *2 (E.D. Mich. June 15, 2006); *see also In re Solar Stamping & Mfg., LLC*, No. 08-13433, 2008 WL 4239146, at *1 (E.D. Mich. Sept. 10, 2008). After pre-trial matters conclude, and the case is ready for trial, the parties and the Bankruptcy Court will then notify the Court, and a final pretrial conference and date for the jury trial will be set.

On August 29, 2019, this Court held a status conference regarding this matter in conjunction with related matters. Mr. Tindall appeared and advised the Court he anticipated filing a Motion for Reconsideration with the District Court or taking an appeal to the Sixth Circuit Court

of Appeals.  The Court was advised he would notify this Court of the outcome of any such action.

The Court was not advised of any appellate status until the Court held a routine status conference

regarding this matter on September 6, 2022.  Thereafter, a flurry of pleadings have been filed with

the Court.  Two pleadings filed by Mr. Tindall, Dockets #107 and #108, restate arguments already

raised and decided by the District Court in its August 22, 2019 Order.

      The first pleading after the September 6, 2022 conference, however, is Plaintiff's Motion

for Summary Judgment.  As the District Court noted and concluded, Counts I and III are moot and

Plaintiff renewed that argument.  As to Count II – Breach of Fiduciary Duty and Waste, Plaintiff

argues that he has immunity, citing *Grant, Konvalinka & Harrison, PC v. Banks, Morgan, and

Richard Banks & Assoc., P.C.* (*In re McKenzie*), 716 F.3d 404 (6th Cir. 2013), *cert. den.,* 571 U.S.

955 (2013).

      Mr. Tindall replied, denying that Plaintiff was entitled to immunity and pointing out that

Plaintiff did not plead immunity in his response to the counter-claim.  Plaintiff in turn amended

his response to include the immunity defense.  Mr. Tindall countered this maneuver by filing a

Motion to Strike on November 8, 2022 (Docket #99) which Plaintiff replied to on November 22,

2022 (Dockets #110 and #112).

      The Court heard oral arguments on November 8, 2022 and took this matter under

advisement.  The Court has reviewed all pleadings filed after September 6, 2022 and finds that

additional oral argument is not necessary.

Statement of Legal Authorities and Standards

Summary Judgment Standard

      Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy

adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 7056(c) provides that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980).  The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist.  *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

<u>Amendments to Pleadings Standard</u>

 Federal Rule of Civil Procedure 15(a)(2) states:

> **(a)** **Amendments Before Trial**
>
> . . .
>
> **(2)** ***Other Amendments***.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

This Rule is applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7015.

<u>Analysis</u>

The application of immunity is dispositive to the remaining count in the counter-claim. The first and third counts are moot and Mr. Tindall did not address either count in his response or

at oral argument.  To get to the application of the immunity defense, the Court must first determine if that defense has been waived.

In his brief and in oral argument, Mr. Tindall makes much of the failure of Plaintiff to plead immunity in his initial response.  Mr. Tindall is correct, but that alone does not completely address the issue.

First, the authority cited by Mr. Tindall, *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 269-70 (6th Cir. 2010), does hold that qualified immunity can be waived when raised sua sponte by the trial court.  Moreover, *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) did prohibit the raising of an immunity defense because of length of time and extensive litigation, as well as three published opinions.

Here, neither the *Summe* or *Haskell* factors are present.  Plaintiff raised the issue of immunity as early as May 23, 2019 in his Amended Motion for Summary Judgment of Counter Claims:

> C.  Immunity.  The Trustee believes that he has provided a qualified judicial immunity in the Sixth Circuit Court of Appeals and as such this claim is not well founded.  Pursuant to In re McKenzie, 716 Fed 3rd 404 Sixth Circuit 2013 the Trustee's actions as long as within the scope of his employment and taken pursuant to proper court orders are immune from a potential claim individually by a creditor or other party in interest.  Ironically, the only exception to this appears to be when a Trustee wrongfully seizes property that is found not to be property of the estate without first obtaining a Court order.  As the Counter Plaintiff had requested and had specifically provided in their Counter Claim that the Trustee take specific action prior to obtaining a determination that this property did constitute property of the estate.  The Trustee further relies upon In re Bryan, 308 B.R. 583 (2004), In Re Hildebrand, 205 B.R. 278 (1997) and Weissman v. Hassett, 47 B.R. 462 (1985) wherein a Trustee is provided with immunity for claims provided he acts within the scope of his duty and pursuant to bankruptcy court orders.  This Trustee has done exactly that and as such sees no basis for Counter Plaintiff's claim.

Likewise, time has passed because Mr. Tindall sought appellate review of the District Court's August 22, 2019 Order and he neglected to advise the Court of the completion of his

efforts.  Moreover, there has not been any activity, much less extensive litigation in this adversary proceeding.  Accordingly, the Court finds and concludes that Plaintiff did not waive his immunity and that Mr. Tindall's Motion to Strike Plaintiff's Pleading should be denied.

The Court next turns to the applicability of Plaintiff's immunity defense.  The Plaintiff as a Trustee was tasked with the liquidation of Debtor's assets, which includes the 1011 Jones Road property.  He sought out purchasers for the property but was not as successful as Mr. Tindall would have liked.  Once Plaintiff did obtain a potential purchaser, he duly filed a motion with this Court and noticed creditors and parties in interest, including Mr. Tindall and Ms. Duggan.  Mr. Tindall and Ms. Duggan objected, and Plaintiff filed an amended motion to transfer interest of the 1011 Jones Road property to the sale proceeds.  Objections were again raised and overruled by the Court, and an Order approving the sale was entered on March 13, 2019.  As summarized in the Trustee's Report of Sale and Seller's Settlement Statement filed on May 30, 2019 in the bankruptcy case of Christopher Wyman, the 1011 Jones Road property was sold and a closing held on May 29, 2019 with the interests of Ms. Duggan and Mr. Tindall paid.

Federal Rule of Civil Procedure 15 allows for the amendment of pleadings and applies in this instance.  Mr. Tindall was on notice of Plaintiff's immunity defense as early as May 2019 and is not prejudiced by the amendment of Plaintiff's defenses.  Justice requires this Court to give leave to Plaintiff in this situation, so the Court allows Plaintiff to amend his affirmative defenses as stated in his October 31, 2022 pleading found at Docket #93.

Plaintiff has acted within his statutory authority as a bankruptcy trustee under 11 U.S.C. § 704, and has the immunity granted to him by *Grant, supra*.  More importantly, when a trustee is acting pursuant to a court order, such as in this case with the March 13, 2019 Sale Order, the trustee is protected by absolute or derived immunity.  *See Phoenician Mediterranean Villa, LLC v. Swope*

*(In re JBS Properties, LLC)*, 872 F.3d 138, 142 n.3 (3d Cir. 2017) (citing *In re Harris*, 590 F.3d

730, 742 (9th Cir. 2009); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A. Mar.

1981)).  As stated by the United States Supreme Court:

> "The practice is well established by which Trustees seek instructions from the
> Court, given notice to creditors and interested parties, as to matters which involve
> difficult question of judgment ……but had it been authorized, at least the assenting
> creditor might have found themselves estopped to question the transaction."

*Mosser v. Darrow*, 341 U.S. 267, 274 (1951).

Plaintiff did exactly that in this case and is entitled to immunity, which compels the Court

to grant his Motion for Summary Judgment.

<u>Conclusion</u>

For the reasons stated in this Opinion, the Court GRANTS Plaintiff's Motion for Summary

Judgment (Docket #88).

The Court enters an Order consistent with this Opinion.

**Not for publication**

**Signed on December 28, 2022**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

|  |  |
|---|---|
|  | Case No. 12-32264-dof |
| CHRISTOPHER D. WYMAN, | Chapter 7 Proceeding |
| Debtor. | Hon. Daniel S. Opperman |

_____/
SAMUEL D. SWEET,
        Plaintiff/Counter-Defendant,

v.                                                                          Adversary Proceeding
                                                                           Case No. 19-03018-dof

BARBARA DUGGAN,
        Defendant/Counter-Plaintiff.
_____/

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 88)

       For the reasons stated in this Court's Opinion Regarding Plaintiff's Motion for Summary

Judgment of even date;

       WHEREFORE, IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary

Judgment filed on September 20, 2022 at Docket No. 88 is GRANTED.

**Signed on December 28, 2022**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

CHRISTOPHER D. WYMAN,                    Case No. 17-32513
                                         Chapter 7 Proceeding
            Debtor.                      Hon. Daniel S. Opperman
_____/
SAMUEL D. SWEET, Chapter 7 Trustee,

            Plaintiff/Counter-Defendant,

v.                                       Adv. Proc. No. 19-3018

BARBARA DUGGAN,

            Defendant/Counter-Claimant.
_____/

<u>ORDER DENYING MOTION OF MICHAEL TINDALL TO STRIKE AMENDED
AFFIRMATIVE DEFENSES (DOCKET NO. 99)</u>

For the reasons stated in this Court's Opinion Regarding Plaintiff's Motion for Summary

Judgment of even date;

WHEREFORE, IT IS HEREBY ORDERED that the above-titled Motion is DENIED.

**Signed on December 28, 2022**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

CHRISTOPHER D. WYMAN,                    Case No. 17-32513
                                         Chapter 7 Proceeding
            Debtor.                      Hon. Daniel S. Opperman
_____/
SAMUEL D. SWEET, Chapter 7 Trustee,

            Plaintiff/Counter-Defendant,

v.                                       Adv. Proc. No. 19-3018

BARBARA DUGGAN,

            Defendant/Counter-Claimant.
_____/

ORDER ALLOWING PLAINTIFF'S AMENDED
AFFIRMATIVE DEFENSES (DOCKET NO. 93)

For the reasons stated in this Court's Opinion Regarding Plaintiff's Motion for Summary

Judgment of even date;

WHEREFORE, IT IS HEREBY ORDERED that the Amended Affirmative Defenses

filed by Plaintiff on October 31, 2022 at Docket No. 93 are ALLOWED.

**Signed on December 28, 2022**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

      CHRISTOPHER D. WYMAN,           Case No. 17-32513
                                           Chapter 7 Proceeding
          Debtor.                   Hon. Daniel S. Opperman

_____/

SAMUEL D. SWEET, Chapter 7 Trustee,

          Plaintiff/Counter-Defendant,

v.                                     Adv. Proc. No. 19-3018

BARBARA DUGGAN,

          Defendant/Counter-Claimant.

_____/

ORDER OVERRULING THE NOTICE OF UNRESOLVED AND OUTSTANDING ISSUES
FILED BY MICHAEL TINDALL (DOCKET NO. 95)

      For the reasons stated in this Court's Opinion Regarding Plaintiff's Motion for Summary

Judgment of even date;

      WHEREFORE, IT IS HEREBY ORDERED that the above-titled Notice is

OVERRULED.

**Signed on December 28, 2022**



                                     **/s/ Daniel S. Opperman**
                                      **Daniel S. Opperman**
                                      **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

                Case No. 12-32264-dof
    CHRISTOPHER D. WYMAN,        Chapter 7 Proceeding
        Debtor.              Hon. Daniel S. Opperman
_____/
SAMUEL D. SWEET,
    Plaintiff/Counter-Defendant,

v.                            Adversary Proceeding
                            Case No. 19-03018-dof
BARBARA DUGGAN,
    Defendant/Counter-Plaintiff.
_____/

## OPINION DENYING FRCP 59(e) MOTION TO MODIFY/ALTER/AMEND OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Defendant/Counter-Plaintiff Michael Tindall filed a Motion to Modify/Alter/Amend Opinion Regarding Plaintiff's Motion for Summary Judgment arguing that the Court ignored United States Supreme Court precedent. Because the Court finds the cases cited by Mr. Tindall do not support his position, the Court denies Mr. Tindall's Motion.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

### Background

Since the instant Motion seeks to modify, alter or amend the December 28, 2022 Opinion of this Court, the Court reproduces that Opinion:

1

OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Introduction

Plaintiff, Samuel D. Sweet, seeks summary judgment as to the counter-claims of Defendant, Michael Tindall.  Mr. Tindall responded to this motion and the Court heard oral arguments on November 8, 2022. Subsequently, Mr. Tindall has filed various pleadings with this Court that touch on issues raised in this adversary proceeding and at oral argument.  For the reasons stated in this Opinion, the Court grants Plaintiff's Motion for Summary Judgment.

Background

Plaintiff originally objected to the secured status of the claim of Barbara Duggan.   Because the relief sought was more appropriate in an adversary proceeding, this proceeding was opened.  A portion of Ms. Duggan's claim was assigned to Mr. Tindall.  Mr. Tindall filed responses and a counter-claim, and Plaintiff filed a response.  Subsequently, Mr. Tindall and Ms. Duggan filed a Motion to Withdraw Reference.  The District Court for the Eastern District of Michigan heard oral arguments and issued an Order Denying Motion to Withdraw Reference (#1) and Administratively Closing Case on August 22, 2019.  This Order states:

> On March 18, 2019, Sweet commenced an Adversary Proceeding against Defendants Tindall and Duggan (collectively, "Defendants") to avoid the enforcement of Duggan's Judgment Lien against the real property. (Adversary No. 19-03018, Doc # 1) In the Adversary Proceeding, Sweet alleged that Duggan failed to renew her Judgment Lien five years from the original filing date pursuant to Mich. Comp. Laws § 600.2809. (*Id*.) On March 22, 2019, Defendants filed a Counter Complaint, which included three counterclaims, including: Declaratory Judgment (Claim I); Breach of Fiduciary Duty and Waste

2

under 11 U.S.C. § 704 (Claim II);1 and Abandonment under 11 U.S.C. § 554(b) (Claim III). (Adversary No. 19-03018, Doc # 11) Claims I and III are now moot because the real property has been sold. (Doc # 1, Pg ID 3)

On June 13, 2019, Defendants filed a Motion to Withdraw Reference pursuant to 28 U.S.C. § 157(d). (Doc # 1) According to Defendants, the circumstances of this case "create both grounds for mandatory withdrawal of the reference, and, 'cause' for permissive withdrawal of the reference." (*Id*. at Pg ID 4) In addition to their request to withdraw the reference, Defendants request that the Court stay all further proceedings in the Bankruptcy Court and expedite the hearing on this Motion. (*Id*. at 5.) A Response was filed on June 17, 2019, and a Reply was filed on June 19, 2019. (Doc # 3; Doc # 5) A hearing was held on this matter on July 10, 2019.

. . .

**A. Mandatory Withdrawal**

Defendants request that the Court exercise its authority to withdraw the reference pursuant to 28 U.S.C. § 157(d). Defendants argue that Claim II pertains to a non-core state law tort claim, which not only entitles them to a jury trial, but also prevents the Bankruptcy Court from having the subject matter jurisdiction necessary to hear their Claim. Without going into any detail, Defendants contend that the courts in *Stern v. Marshall*, 564 U.S. 462 (2011), *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), and *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), found that claims such as theirs constitute non-core proceedings.

In response, Sweet argues that Defendants' Claim is a core matter because it concerns and affects the administration of the bankruptcy estate that is at issue. Sweet claims that courts have considered this issue, and ruled that a lawsuit against a trustee is a core matter. Sweet's contention is premised on his belief that he could not have breached a fiduciary duty, because under Michigan law, a trustee only has a duty to the bankruptcy estate and not to each individual creditor. Further, Sweet attempts to distinguish the instant case from *Waldman* and *Stern*, and asserts that those cases involved a debtor and a creditor, as opposed to this case, which includes a trustee and creditors.

The determinative issue in this case is whether a Breach of Fiduciary Duty and Waste claim under 11 U.S.C. § 704 constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2). Congress has provided

3

a non-exhaustive list of "core" matters in § 157(b)(2), including: 1) matters concerning the administration of the estate; 2) counterclaims by the estate against persons filing claims against the estate; 3) proceedings to determine, avoid, or recover preferences and fraudulent conveyances; 4) orders to turn over property of the estate; and 5) confirmation of plans. 28 U.S.C. § 157(b)(2). A bankruptcy court may hear and determine a core proceeding, unless a party demands a jury trial. 28 U.S.C. § 157(b)(1), (e). Absent consent of the parties, the bankruptcy judges will conduct hearings and file proposed findings of fact and conclusions of law on non-core proceedings. E.D. Mich. LR 83.50(a)(3).

The Court finds that Claim II clearly falls under the *core proceedings* category because it is premised on Sweet's potential liability for violating 11 U.S.C. § 704. § 157(b)(2)(A) straightforwardly indicates that core proceedings include "matters concerning the administration of the estate." Claim II is based on Defendants' argument that Sweet failed "to protect and preserve property of the Bankruptcy Estate for the benefit of the creditors." (Adversary No. 19-03018, Doc # 11) Defendants' Claim directly relates to the manner in which Sweet allegedly carried out his obligations while *administering the estate*. *See* 28 U.S.C. § 157(b)(2).

Defendants have argued that their Claim is a state law tort claim, which therefore would require the Court to determine that it should be deemed a non-core proceeding. The Court is unconvinced by such an argument. In Defendants' Counter Complaint, they determined that they would bring forward a Breach of Fiduciary Duty and Waste claim pursuant to 11 U.S.C. § 704. There was no mention of any state law violations. The Court will not allow Defendants to now make such an argument because it is convenient for them. Claim II is based on federal law and the Court will assess Defendants' Claim as such for purposes of the instant Motion.

Defendants additionally contend that the courts in *Stern*, *Waldman*, and *Arkison* found that claims similar to theirs were non-core proceedings. The difference between those three cases and the instant case however, is that those cases each assessed *state law claims*. As mentioned, Claim II is not premised on state law and therefore, those cases are not analogous to the present case.

Since the proceeding here is a *core proceeding*, the Court must assess whether Defendants are entitled to mandatory withdrawal. There are three conditions in the statute which must be met to withdraw a case or proceeding under the mandatory withdrawal provision in § 157(d): 1) the movant is a party; 2) the motion is timely; and 3) the resolution

of the proceeding before the Bankruptcy Court requires consideration of both Title 11 and another federal law regulating organizations or activities affecting interstate commerce. *In re Baldwin–United Corp.*, 47 B.R. 898, 899 (S.D.Ohio 1984).

Here, the Court finds that Defendants have not satisfied all three prongs of the mandatory withdrawal analysis. The first prong has been met as to Duggan because she is a party to the underlying bankruptcy action. The second prong has been satisfied. Courts have determined that something will be considered *timely* if it is done at the "first reasonable opportunity." *In re Baldwin–United Corporation*, 57 B.R. 751, 753 (S.D.Ohio 1985). Courts have further explained that timeliness requires that action be taken without undue delay and must be evaluated in the context of the specific situation. *Id*. The Adversary Proceeding commenced on March 18, 2019, and the present Motion was filed on June 13, 2019. The Court determines that a period of approximately three months may be considered *timely* even though there does not appear to be a reason why Defendants could not have filed the instant Motion sooner, and Defendants have not explained why they waited almost three months to file their Motion. Finally, the Court finds that the third prong has *not* been met because the only law at issue is 11 U.S.C. § 704. No other "federal law regulating organizations or activities affecting interstate commerce" has been referenced by Defendants in relation to Claim II and they have not argued otherwise.

**B. Discretionary Withdrawal**

Defendants argue that the Court should alternatively exercise its authority pursuant to 28 U.S.C. § 157(d)'s discretionary withdrawal provision. Regarding discretionary withdrawal, it appears that Defendants insist that the Court should use its discretionary authority to withdraw the reference since the Bankruptcy Court relocated from Flint, Michigan to Bay City, Michigan. Defendants seemingly argue that this relocation will make it more difficult for them and their counsel to appear at subsequent proceedings. Defendants assert that this case should be heard in this Court because it would be less burdensome for them and their counsel to travel to Detroit, Michigan as opposed to Bay City, Michigan. The Court notes that Sweet did not address Defendants' argument pertaining to a potential discretionary withdrawal.

Section 157(d) grants the district court the discretion to withdraw the reference for "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." In considering a withdrawal motion, "whether a proceeding is

5

core or non-core…is a central question." *In re Appalachian Fuels, LLC*, 472 B.R. 731, 2012 WL 1344984 at *4 (E.D.Ky.2012). A district court should first evaluate whether the claim is core or non-core and then turn to the other factors. *Id*. Courts have considered the following factors to determine whether cause exists to withdraw the reference: 1) judicial economy; 2) uniformity in Bankruptcy administration; 3) reducing forum shopping and confusion; 4) fostering economical use of the debtor's and creditor's resources; 5) expediting the bankruptcy process; and 6) the presence of a jury demand. *Id*. at *3. Other courts in this circuit have found that discretionary withdrawal of reference requires "compelling" cause. *Id*.

The Court finds that the justification offered by Defendants is not *compelling*. While the Court understands that the relocation of the Bankruptcy Court might be a hardship for Defendants as it relates to their travel to future proceedings, the Court does not believe that it will impose a burden on Defendants that is significant enough for the Court to exercise its discretion to withdraw the reference.

### C. Jury Trial

Defendants additionally assert that they are entitled to a jury trial before this Court and "have not and do not consent to the Bankruptcy Court hearing and/or entering Judgment on Count II." (Doc # 1, Pg ID 4) Parties may consent to a jury trial before the Bankruptcy Court if *all parties* so agree. 28 U.S.C. § 157(e) states:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e). Considering that Defendants do not consent to a jury trial in the Bankruptcy Court, but still demand a jury trial, the referral of the case may be withdrawn by the District Court. However, Defendants have not shown that they are entitled to a jury trial as to Claim II. As argued by Sweet, as a trustee, he has no duty to the creditors, only to the bankruptcy estate under Michigan law. The Court denies Defendants' request for a jury trial at this time. If it is determined that Defendants are entitled to a jury trial before this Court, the Court finds that in the interest of judicial economy, the Bankruptcy Court should complete the pre-trial portion of this case. Other courts have similarly found this approach to be appropriate in these instances. *See In re Collins & Aikman Corp.*, No. 05-55927, 2006 WL 6584164, at *2 (E.D. Mich. June 15, 2006); *see also In re Solar Stamping & Mfg., LLC*,

6

No. 08-13433, 2008 WL 4239146, at *1 (E.D. Mich. Sept. 10, 2008).
After pre-trial matters conclude, and the case is ready for trial, the
parties and the Bankruptcy Court will then notify the Court, and a final
pretrial conference and date for the jury trial will be set.

On August 29, 2019, this Court held a status conference regarding this
matter in conjunction with related matters.  Mr. Tindall appeared and advised the
Court he anticipated filing a Motion for Reconsideration with the District Court or
taking an appeal to the Sixth Circuit Court of Appeals.  The Court was advised he
would notify this Court of the outcome of any such action.  The Court was not
advised of any appellate status until the Court held a routine status conference
regarding this matter on September 6, 2022.  Thereafter, a flurry of pleadings have
been filed with the Court.  Two pleadings filed by Mr. Tindall, Dockets #107 and
#108, restate arguments already raised and decided by the District Court in its
August 22, 2019 Order.

The first pleading after the September 6, 2022 conference, however, is
Plaintiff's Motion for Summary Judgment.  As the District Court noted and
concluded, Counts I and III are moot and Plaintiff renewed that argument.  As to
Count II – Breach of Fiduciary Duty and Waste, Plaintiff argues that he has
immunity, citing *Grant, Konvalinka & Harrison, PC v. Banks, Morgan, and
Richard Banks & Assoc., P.C.* (*In re McKenzie*), 716 F.3d 404 (6th Cir. 2013), *cert.
den.,* 571 U.S. 955 (2013).

Mr. Tindall replied, denying that Plaintiff was entitled to immunity and
pointing out that Plaintiff did not plead immunity in his response to the counter-
claim.  Plaintiff in turn amended his response to include the immunity defense.  Mr.
Tindall countered this maneuver by filing a Motion to Strike on November 8, 2022

7

(Docket #99) which Plaintiff replied to on November 22, 2022 (Dockets #110 and #112).

The Court heard oral arguments on November 8, 2022 and took this matter under advisement.  The Court has reviewed all pleadings filed after September 6, 2022 and finds that additional oral argument is not necessary.

Statement of Legal Authorities and Standards

Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980).  The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

Amendments to Pleadings Standard

Federal Rule of Civil Procedure 15(a)(2) states:

8

(a)    **Amendments Before Trial**

. . .

(2)    ***Other Amendments***.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

This Rule is applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7015.

<u>Analysis</u>

The application of immunity is dispositive to the remaining count in the counter-claim.  The first and third counts are moot and Mr. Tindall did not address either count in his response or at oral argument.  To get to the application of the immunity defense, the Court must first determine if that defense has been waived.

In his brief and in oral argument, Mr. Tindall makes much of the failure of Plaintiff to plead immunity in his initial response.  Mr. Tindall is correct, but that alone does not completely address the issue.

First, the authority cited by Mr. Tindall, *Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 269-70 (6th Cir. 2010), does hold that qualified immunity can be waived when raised sua sponte by the trial court.  Moreover, *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) did prohibit the raising of an immunity defense because of length of time and extensive litigation, as well as three published opinions.

Here, neither the *Summe* or *Haskell* factors are present.  Plaintiff raised the issue of immunity as early as May 23, 2019 in his Amended Motion for Summary Judgment of Counter Claims:

C. <u>Immunity</u>.  The Trustee believes that he has provided a qualified judicial immunity in the Sixth Circuit Court of Appeals and as such this claim is not well founded.  Pursuant to In re McKenzie, 716 Fed 3rd 404 Sixth Circuit 2013 the Trustee's actions as long as within the scope of his employment and taken pursuant to proper court orders are immune from a potential claim individually by a creditor or other party in interest.  Ironically, the only exception to this appears to be when a Trustee wrongfully seizes property that is found not to be property of the estate without first obtaining a Court order.  As the Counter Plaintiff had requested and had specifically provided in their Counter Claim that the Trustee take specific action prior to obtaining a determination that this property did constitute property of the estate.  The Trustee further relies upon In re Bryan, 308 B.R. 583 (2004), In Re Hildebrand, 205 B.R. 278 (1997) and Weissman v. Hassett, 47 B.R. 462 (1985) wherein a Trustee is provided with immunity for claims provided he acts within the scope of his duty and pursuant to bankruptcy court orders.  This Trustee has done exactly that and as such sees no basis for Counter Plaintiff's claim.

Likewise, time has passed because Mr. Tindall sought appellate review of the District Court's August 22, 2019 Order and he neglected to advise the Court of the completion of his efforts.  Moreover, there has not been any activity, much less extensive litigation in this adversary proceeding.  Accordingly, the Court finds and concludes that Plaintiff did not waive his immunity and that Mr. Tindall's Motion to Strike Plaintiff's Pleading should be denied.

The Court next turns to the applicability of Plaintiff's immunity defense.  The Plaintiff as a Trustee was tasked with the liquidation of Debtor's assets, which includes the 1011 Jones Road property.  He sought out purchasers for the property but was not as successful as Mr. Tindall would have liked.  Once Plaintiff did obtain a potential purchaser, he duly filed a motion with this Court and noticed creditors and parties in interest, including Mr. Tindall and Ms. Duggan.  Mr. Tindall and Ms. Duggan objected, and Plaintiff filed an amended motion to transfer interest of the 1011 Jones Road property to the sale proceeds.  Objections were again raised and

10

overruled by the Court, and an Order approving the sale was entered on March 13, 2019.  As summarized in the Trustee's Report of Sale and Seller's Settlement Statement filed on May 30, 2019 in the bankruptcy case of Christopher Wyman, the 1011 Jones Road property was sold and a closing held on May 29, 2019 with the interests of Ms. Duggan and Mr. Tindall paid.

Federal Rule of Civil Procedure 15 allows for the amendment of pleadings and applies in this instance.  Mr. Tindall was on notice of Plaintiff's immunity defense as early as May 2019 and is not prejudiced by the amendment of Plaintiff's defenses.  Justice requires this Court to give leave to Plaintiff in this situation, so the Court allows Plaintiff to amend his affirmative defenses as stated in his October 31, 2022 pleading found at Docket #93.

Plaintiff has acted within his statutory authority as a bankruptcy trustee under 11 U.S.C. § 704, and has the immunity granted to him by *Grant, supra*.  More importantly, when a trustee is acting pursuant to a court order, such as in this case with the March 13, 2019 Sale Order, the trustee is protected by absolute or derived immunity.  *See Phoenician Mediterranean Villa, LLC v. Swope (In re JBS Properties, LLC)*, 872 F.3d 138, 142 n.3 (3d Cir. 2017) (citing *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A. Mar. 1981)).  As stated by the United States Supreme Court:

> "The practice is well established by which Trustees seek instructions from the Court, given notice to creditors and interested parties, as to matters which involve difficult question of judgment ……but had it been authorized, at least the assenting creditor might have found themselves estopped to question the transaction."

*Mosser v. Darrow*, 341 U.S. 267, 274 (1951).

Plaintiff did exactly that in this case and is entitled to immunity, which compels the Court to grant his Motion for Summary Judgment.

Conclusion

For the reasons stated in this Opinion, the Court GRANTS Plaintiff's Motion for Summary Judgment (Docket #88).

The Court entered an Order consistent with its Opinion on December 28, 2022. Mr. Tindall seeks relief because he argues this Court disregarded certain Supreme Court authority "prohibiting this Court from sua sponte asserting/preserving 'defenses' not raised by the parties." (Docket No. 125, at 4).

After analysis of prior pleadings and the instant Motion, the Court issues this Opinion.

Analysis

Mr. Tindall starts his argument by citing *Wood v. Milyard*, 566 U.S. 463 (2012), a habeas petition case. On its face, habeas petition cases differ from civil cases, but further analysis is worthwhile. Mr. Tindall's initial cite to *Wood* excludes the following sentence:

> "Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto."

*Id.* at 470 (quoting *Day v. McDonough*, 547 U.S. 198, 202 (2006)).

In this case, Plaintiff raised the issue of immunity in his May 23, 2019 Amended Motion for Summary Judgment. Moreover, he requested leave to amend his Answer. Plaintiff's defense was raised per Rule 15 and the *Wood* language.

*Wood*, however, continues as follows:

> Consistent with *Granberry* and *Day*, we decline to adopt an absolute rule barring a court of appeals from raising, on its own motion, a forfeited timeliness defense. The institutional interests served by AEDPA's statute of limitations are also present when a habeas case moves to the court of appeals, a point *Granberry* recognized with respect to a nonexhaustion defense. We accordingly hold, in response to the

12

first question presented, see *supra*, at 1831, that courts of appeals, like district courts, have the authority – though not the obligation – to raise a forfeited timeliness defense on their own initiative.

*Id.* at 473.

After recognizing there is no absolute rule barring a court of appeals from raising on its own a defense, the *Wood* Court then analyzed the case before it and instructed the Court of Appeals that the District Court properly did not consider a defense.

Another lesson springs from *Wood*. Affirmative defenses not asserted at the trial level should not surface the first time on appeal. Here, the issue of immunity surfaced in 2019 and continued in place. To clarify the pleadings, Plaintiff timely sought leave to add this affirmative defense under Rule 15. Both the Supreme Court and Rule 15 standards were met.

Mr. Tindall next argues:

> The US Supreme Court has, repeatedly, made clear that federal courts are not at liberty to sua sponte assert defenses waived by a party in litigation. *Arizona v. California*, 530 US 392, 413-13 (2000). Doing this erodes the principle of party presentation basic to the neutral system of adjudication maintained by United States courts. *Id.* In a neutral system, a defendant should be the party pointing out the weaknesses of a plaintiff's claim. If the Court raises this argument on the defendant's behalf, the system is no longer neutral, and the Court has become the defendant's representative. *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) (**The federal system is an adversarial system of justice. If the system functions normally, "courts are generally limited to addressing the claims and arguments advanced by the parties."**) Parties are obliged to present facts and legal arguments before a neutral and relatively passive decision-maker." *Eriline Co. S.A. v. Johnson,* 440 F.3d 648, 654 (4th Cir. 2006).

In *Henderson*, the Court stated:

> "**This reasoning overlooks the importance of procedural default rules in an adversary system, which reliefs chiefly on the *parties* to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication.** See *Castro v. United States*, 540 U.S. 375, 386 (2003) (SCALIA, J., concurring in part and concurring in judgment) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments

13

entitling them to relief"). **Procedural default rules are designed to encourage parties to raise their claims promptly and to vindicate "the law's important interest in the finality of judgments."** *Massaro*, 538 U.S., at 504.  The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim.

The Court confirmed this in *Wood*, at 1830, when it stated:

> "Our precedent establishes that a court may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition.  *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (exhaustion defense);  *Day v. McDonough*, 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (statute of limitations defense).  Does court discretion to take up timeliness hold when a State is aware of a limitations defense, and intelligently chooses not to rely on it in the court of first instance?  The answer *Day* instructs is "no":  A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense.  *Id.*, at 202, 210, n. 11, 126 S.Ct. 1675.  The Tenth Circuit, we accordingly hold, abused its discretion by resurrecting the limitations issue instead of reviewing the District Court's disposition on the merits of Wood's claims."

In this case, Plaintiff filed a Motion for Summary Judgment, Mr. Tindall filed a Response, and Plaintiff filed an Amended Motion for Summary Judgment which raised the issue of his immunity.  The parties presented their legal arguments and the Court decided the matter.  Contrary to the insinuation of Mr. Tindall, this Court did not sua sponte assert a waived defense.  It properly heard arguments, allowed Plaintiff to amend his pleadings under Rule 15 and then granted his Motion for Summary Judgment.  Since neither the record or the authorities cited by Mr. Tindall compels any modification of the Court's December 28, 2022 Opinion, the Court DENIES his Motion.

The Court will enter an Order consistent with this Opinion.

**Not for Publication**


**Signed on February 27, 2023**



/s/ Daniel S. Opperman

**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

      Case No. 12-32264-dof

    CHRISTOPHER D. WYMAN,      Chapter 7 Proceeding

         Debtor.      Hon. Daniel S. Opperman

_____/

SAMUEL D. SWEET,

      Plaintiff/Counter-Defendant,

v.      Adversary Proceeding

      Case No. 19-03018-dof

BARBARA DUGGAN,

      Defendant/Counter-Plaintiff.

_____/

<u>ORDER DENYING FRCP 59(e) MOTION TO MODIFY/ALTER/AMEND OPINION
REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

For the reasons stated in this Court's Opinion Denying FRCP 59(e) Motion To
Modify/Alter/Amend Opinion Regarding Plaintiff's Motion for Summary Judgment entered
contemporaneously with this Order;

IT IS HEREBY ORDERED that Michael E. Tindall's Motion to Modify/Alter/Amend
Opinion Regarding Plaintiff's Motion for Summary Judgment is DENIED.

Signed on February 27, 2023



/s/ Daniel S. Opperman
_____
**Daniel S. Opperman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

| | |
|---|---|
| CHRISTOPHER D. WYMAN, | Case No. 12-32264-dof |
| Debtor. | Chapter 7 Proceeding |
| | Hon. Daniel S. Opperman |

_____/
MICHAEL A. MASON, U.S. Bankruptcy
Trustee, and BARBARA DUGGAN,

     Plaintiffs,

v.                                                                    Adversary Proceeding
                                                                      Case No. 12-03348-dof
MICHELLE PICHLER, a/k/a/ MICHELLE GENTRY
AND EDWARD LINCK,

     Defendants.

_____/


ORDER DENYING AMENDED CLAIMANT'S
FRCP 60(b)(4) MOTION TO VACATE

     For the reasons stated in this Court's Opinion Denying Amended Claimant's FRCP

60(b)(4)) Motion To Vacate, entered contemporaneously with this Order;

     IT IS HEREBY ORDERED that Michael E. Tindall's Motion To Vacate is DENIED.


**Signed on February 27, 2023**



          **/s/ Daniel S. Opperman**
          **Daniel S. Opperman**
          **United States Bankruptcy Judge**

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

CHRISTOPHER D. WYMAN,
        Debtor.

Case No. 12-32264-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

_____/

MICHAEL A. MASON, U.S. Bankruptcy
Trustee, and BARBARA DUGGAN,
      Plaintiffs,

v.

Adversary Proceeding
Case No. 12-03348-dof

MICHELLE PICHLER, a/k/a/ MICHELLE GENTRY
AND EDWARD LINCK,
      Defendants.

_____/

OPINION REGARDING AMENDED CLAIMANT'S
FRCP 60(b)(4) MOTION TO VACATE

Introduction

Michael Tindall filed a Motion to Vacate the November 3, 2017 Order of this Court that set aside a default judgment against Defendants, and asks that this Court award compensatory sanctions of $109,000 and punitive sanctions of $327,000 against Samuel Sweet. He also asks this Court to vacate a November 13, 2017 Amended Order to Set Aside Default (#422) and a Certificate of Service (#425), and the March 1, 2018 Order Dismissing this Adversary Proceeding. For the reasons stated in this Opinion, the Court denies his Motions.

1

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Findings of Fact

There were numerous discovery disputes in this action which caused the Court to enter orders compelling discovery, notably the production of documents.  The Court required Ms. Pichler to produce documents to Mr. Tindall, Plaintiffs' counsel, by July 14, 2014, and if she did not do so, a default judgment would be entered against her upon the filing of an affidavit showing the lack of compliance.  Mr. Tindall filed two affidavits attesting to this failure, and the Court entered a default judgment against Ms. Pichler in reliance on those affidavits.

The affidavits, however, later were demonstrated to be false.  Ms. Pichler's new counsel, Kevin Toll, filed numerous pleadings with this Court and the District Court for the Eastern District of Michigan detailing the falseness of the affidavits.  In particular, it was shown that Ms. Pichler had the documents emailed to Mr. Tindall and also hand delivered a box containing these documents to the post office where Mr. Tindall had a post office box.  She did this because Mr. Tindall did not disclose a physical address where she could deliver the documents.

At the risk of getting ahead of the narrative, it developed that Mr. Tindall did handle the box of documents on July 14, 2014, poked a small hole in the box and concluded by seeing the amount of paper in the box that Ms. Pichler did not comply with the Court's directive.  He did not review any paper and instead declined acceptance of the box, so it was returned to Ms. Pichler.[1]

---

[1] The Court has been advised that postal regulations do not allow the handling and subsequent refusal of a parcel, but these regulations were not followed in this case.

2

Initially, when the Court learned of Mr. Tindall's actions and subsequent affidavits, it expressed grave concerns about the situation. After Ms. Pichler filed a Motion for Indicative Ruling Regarding Motion to Set Aside Default Judgment for Fraud on the Court which Mr. Tindall responded to, the Court entered an Order on May 29, 2015:

<u>ORDER REGARDING EX-PARTE MOTION FOR INDICATIVE RULING</u>
<u>REGARDING MOTION TO SET ASIDE DEFAULT JUDGMENT FOR</u>
<u>FRAUD ON THE COURT</u>

On December 10, 2014, Defendant Michelle Pichler filed the above-titled Motion for Indicative Ruling. By way of background, on July 15, 2014, this Court entered an Order granting Plaintiff's oral Motion for Default Judgment with regard to Counts I (Preferential Transfer) and IV (Turnover pursuant to 11 U.S.C. § 542(a)) the Complaint (Docket No. 227) ("Default Judgment"). On July 28, 2014, the Defendant, Michelle Pichler ("Defendant"), filed a Notice of Appeal of the Default Judgment to the District Court. That appeal is currently pending before the Honorable Denise Page Hood, as District Court Case No. 14-13451. The Defendant filed an Ex Parte Emergency Motion for Temporary Stay Pending Appeal (Docket No. 237) on July 30, 2014, and, on the same day, this Court entered an Order granting Defendant's Ex Parte Emergency Motion for Temporary Stay Pending Appeal (Docket No. 238). In this Order, the Court ordered the Defendant to re-file a new motion for stay pending appeal on or before August 4, 2014, which Defendant did file on August 4, 2014 (Docket No. 253). On September 10, 2014, Defendant filed a Motion to Set Aside Default Judgment based on alleged fraud on the Court and to dismiss the adversary complaint with prejudice (Docket No. 296). The Defendant argued that, pursuant to Fed. R. Civ. P. 60(d)(3), the Court has an "inherent power to grant relief from a judgment which has been secured by a 'fraud on the court.'"

This Court issued its Report and Recommendation on November 17, 2014, regarding the non-core claims not subject to the Default Judgment. The Court also noted some issues with regard to the entry of the Default Judgment and questioned whether the entry of that order was appropriate. The Court noted that there were "serious concerns as to whether the actual documents that Plaintiff's counsel claimed were not produced were ever indeed requested." The Court further stated that "[u]ntil further investigation and presentation of proofs is allowed," "the likelihood of significant error in the Affidavit, Amended Affidavit, and Supplement to Affidavit exist[s] that compels this Court to recommend that further argument and evidence be introduced to address whether Defendant Pichler was in default of this Court's Order."

The instant Motion for Indicative Ruling was thereafter filed on December 10, 2014 (Docket No. 310). The Defendant requests that the Court: (1) grant her

3

ex-parte motion for indicative ruling; (2) issue an indicative ruling that it "would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue"; and (3) grant any other relief the Court deems necessary and appropriate. The Defendant also noted that, while perhaps it is not the proper procedure for the Defendant to have filed this ex parte motion, given the fact that Federal Rule of Bankruptcy Procedure 8008 is new, the filing of such was deemed necessary to alert the Court to the new rule and its possible application to the Defendant's Motion to Set Aside the Default Judgment.

The Plaintiff filed a Response to Defendant's Ex Parte Motion on December 11, 2014 (Docket No. 311), arguing that: (1) no valid/proper motion exists before the Court to make an indicative ruling because the Defendant did not file a motion pursuant to Federal Rule of Civil Procedure 60(b)(3)[1]; (2) by making a voluntary and deliberate choice to file an appeal to the District Court, rather than seek Rule 60(b) relief in this Court initially, the Defendant waived any right to seek Rule 60(b) relief now; and (3) the Defendant's theory of fraud on the Court is not accurate and is based solely on her own intentional misrepresentations.

On December 12, 2014, the Defendant filed a Reply to Plaintiff's Response (Docket No. 312), arguing that: (1) after filing a notice of appeal on July 30, 2014, the Defendant filed a Motion to set aside the Default Judgment based on fraud pursuant to Rule 60(d)(3); (2) the Defendant did not waive her right to file a motion pursuant to Rule 60(b)(3) simply because she appealed the ruling on the Default Judgment; (3) at the time that motion was filed, Federal Rule of Bankruptcy Procedure 8008 was not effective; (4) the Court had not ruled on that motion due to questions regarding jurisdiction, which is the very reason the new Rule 8008 was enacted; (5) although Rule 8008 does not contemplate filing a motion to request an indicative ruling, the Defendant did so on an ex parte basis to bring the new procedure to the Court's attention because her motion preceded its effective date.

Rule 8008, entitled "Indicative Rulings," states:

(a) RELIEF PENDING APPEAL. If a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the bankruptcy court may:

(1) defer considering the motion;
(2) deny the motion; or
(3) state that the court would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue.

(b) NOTICE TO THE COURT WHERE THE APPEAL IS PENDING. The movant must promptly notify the clerk of the court where the

---

[1] Made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9024.

4

appeal is pending if the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue.

(c) REMAND AFTER AN INDICATIVE RULING. If the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue, the district court or BAP may remand for further proceedings, but it retains jurisdiction unless it expressly dismisses the appeal. If the district court or BAP remands but retains jurisdiction, the parties must promptly notify the clerk of that court when the bankruptcy court has decided the motion on remand.

Rule 60 states, in part:

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

\*\*\*

(4) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

\*\*\*

(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

\*\*\*

(3) set aside a judgment for fraud on the court.

Rule 60(d)(3) provides that a judgment may be attacked for fraud on the court. "Fraud on the court consists of conduct: '1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.' " *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir.2010) (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009)). Petitioner bears the burden of proving existence of fraud upon the court by clear and convincing evidence. *Id.*

The Court expressed its reservations about the propriety of the Default Judgment in its November 17, 2014, Report and Recommendation. Accordingly, the Court concludes that, with the record before it, it is appropriate to grant the Defendant's Motion for Indicative Ruling pursuant to Rule 8008(a)(3). The Court would grant the Defendant's Motion To Set Aside Default Judgment pursuant to

5

Rule 60(b)(4) and/or (d)(3), if the United States District Court for the Eastern District of Michigan, where the appeal is pending, remands this case to this Court for that purpose.

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Indicative Ruling is GRANTED, as stated in Rule 8003 (a)(3);

IT IS FURTHER ORDERED that Defendant is to promptly notify the Clerk of the Court of the District Court of this Order pursuant to Rule 8008(b).

The Report and Recommendation referenced in the May 29, 2015 Order states in

pertinent part:

<u>Introduction</u>

The Court's Report and Recommendation consists of three sections. The first section addresses the appropriateness of the Default and subsequent Default Judgment entered by the Court. The second section addresses the issue of liability regarding Counts II and V. The third section addresses the issue of the Plaintiffs' damages.

<u>Appropriateness of Default and Default Judgment as to Defendant, Michelle Pichler</u>

The Default against Defendant Pichler was entered as a result of this Court's Order Regarding Default Judgment dated July 7, 2014, after a series of hearings regarding the production of documents during discovery and pursuant to a Trial Subpoena requested by the Plaintiffs. A copy of the Trial Subpoena was attached as Exhibit 2 to the Affidavit In Support of Entry of Default Judgment as Provided in this Court's Order found at Docket No. 224. The pertinent portions of this Trial Subpoena commanded Ms. Pichler to bring:

ALL BANK STATEMENTS AND CANCELLED CHECKS FOR ALL ACCOUNTS OVER WHICH YOU HAD SIGNATURE AUTHORITY, NO MATTER THE NAME ON THE ACCOUNT, FOR THE YEARS 2008 THROUGH THE CURRENT DATE.

. . .

YOU ARE ORDERED TO PRODUCE FOR INSPECTION AND COPYING:

1.      All bank statements, payment records, check registers, cancelled      checks,      receipts,      wire      transfer advice/confirmations/records, debit advice/records, receipt log

6

entries, copies of personal/certified/cashier/bank checks, promissory notes, showing:

      a.    payments made by you to or on behalf of, or, received from, by or on behalf of CHRISTOPHER WYMAN or any person or entity owned, controlled, operated or acting for him or on his behalf, whether alone or in conjunction with any other person or entity.

Defendant Pichler filed a Motion to Quash Subpoena found at Docket No. 163 on May 16, 2014.  On that day, the parties also filed a Corrected Joint Final Pretrial Order at Docket No. 168 that listed the following Exhibits:

(9) Plaintiffs' Exhibits

Quit Claim Deed recorded April 24, 2012
Linck Discharge of Mortgage

TO THE EXTENT THIS COURT DETERMINES THAT THE ADMISSIONS OF DEBTOR AND DEFENDANTS COUPLED WITH THE ATTACHMENTS [EXHIBIT 5] TO THE COMPLAINT DO NOT ESTABLISH BOTH LACK OF CONSIDERATION AND INSIDER STATUS, PLAINTIFFS WILL PRESENT THE ACCOUNT STATEMENTS OF DEBTOR'S "CORPORATE" ACCOUNT AT FNBH AND PICHLER'S ACCOUNT(S) AT TCF.

On June 18, 2014, this Court conducted a hearing regarding the Motion to Quash Subpoena.  The transcript of that hearing was ordered and appears on the Court's docket at Docket No. 248.  After the conclusion of oral argument, this Court ruled as follows:

THE COURT: . . . The Court has before it two motions that are very similar in nature of the  relief requested.  They essentially involve the subpoenas that have been sent by plaintiffs' counsel to each defendant through counsel compelling the attendance of each defendant at a trial that's set for this - - starting this next Monday as well as for a production of a number of documents.

Each defendant has filed this motion.  It wasn't particularly clear when the motion was filed in regard to the personal attendance of Mr. Linck that there was a request to excuse his attendance as well.  And even today it's not particularly clear of Mr. Linck's ability to appear here at trial.

There's been a response filed to each motion by the plaintiffs - - plaintiffs and the Court has heard oral arguments here today.  The Court also notes there's been a final pre-trial order filed in this case.

7

Reading from that final pre-trial order, the plaintiff lists the following exhibits.  One, quit claim deed recorded April 24, 2012.  Two, the Linck discharge of mortgage.  Three, to the extent this Court determines that the admissions of debtor and the defendants coupled with the attachments Exhibit 5 to the complaint do not establish both lack of consideration and insider status.

Plaintiffs will present the account statements of debtor's corporate account at FNBH and Pichler's accounts at TCF.  Continuing on, defendant's exhibits include the quit claim deed executed on October 16, 2009, the memorandum of land contract executed on May 16, 2009, mortgage executed by Pichler and Wyman and checks from Linck for the purchase and refinance of the sale of the property in question.

To the extent that the subpoena requests that the defendants produce documents that fit squarely within Paragraph 9 of the final pre-trial order, the Court will deny the motion to quash and direct that the defendants do exactly that if need be they need to bring those documents.  I'm certain from what I understand of the case that virtually all these documents have already been produced, but if there are more documents, then so be it.

As to the issue of the potential that a defendant witness may testify here in Court and that testimony may be inconsistent with the testimony given a in [sic] 2004 examination, or a deposition or other sworn areas, the Court is reminded that Rule 612 allows a party to - - allows a witness to refresh his or her recollection and if that occurs then a party under sub section (b) has the option to have the writing produced at the hearing to inspect it and to cross examine the witness about it and to introduce into evidence any portion of the rights to the witness' testimony.

And now I'm reading directly from the - - the rule.  "If the producing party claims the writing includes unrelated material - - I'm sorry, matter, the Court must examine the writing in camera, delete any unrelated portion and order that the rest be delivered to the adverse party.  Any portion deleted or objection must be preserved for the record".

And also sub section (c), "failure to produce or deliver the writing.  If a writing is not produced or is not delivered as ordered, the Court may issue an appropriate order".

. . .

The Court would caution defendants that if writings are used that have not been listed as either an exhibit for the defendant or the plaintiff and if that writing was used to refresh her recollection or memory, defendant should bring that with them so that they can have it ready when Mr. Tindall or Mr. Brauer, or Mr. Olson asks about it.

8

That they can say this is the writing.  We can take a short break if need be to take a look at it and go from there.

But to go beyond the - - the final pre-trial order is inappropriate to completely grant the motion to quash runs afoul of Rule 612. So the Court will allow the subpoena to stand as to the production of documents, but limit it to basically those documents that fit under section  - - I'm sorry, Rule 612.

[Tr., Page 64, Lines 24 and 25; Page 65, Lines 1 - 25; Page 66, Lines 1 - 25; Page 67, Lines 1 - 6 and 12 - 25]

At the conclusion of this hearing, the Court directed counsel for the Plaintiffs to prepare an order consistent with the Court's Opinion.  On July 3, 2014, Plaintiffs' counsel filed a Notice of Submission of Order filed at Docket No. 213. The proposed Order stated the following:

IT IS FURTHER ORDERED that Defendant Pichler's MOTION TO QUASH TRIAL SUBPOENA, DE 163, is GRANTED in part and DENIED in part for the reasons stated on the record, and, Defendant Pichler shall produce all documents described in No. 9 of the FINAL PRE-TRIAL ORDER.

No objection was filed to this Order, but Plaintiffs' counsel did not submit a copy for the Court to sign.

The parties stipulated to the entry of an Order Regarding Default Judgment that this Court signed on July 7, 2014, and was filed at Docket No. 214.  Contrary to the Court's June 18, 2014, Opinion, however, the July 7, 2014, Order required Defendant Pichler to produce all bank records described in the Plaintiffs' Trial Subpoena no later than 5:00 p.m. on July 14, 2014.

Subsequently, counsel for Defendant Pichler withdrew, but from July 1, 2014, through July 14, 2014, forwarded documents in his possession to counsel for the Plaintiffs consistent with the Court's June 18, 2014, Opinion.

On July 14, 2014, counsel for the Plaintiffs filed an Affidavit in Support of Entry of Default Judgment, an Amended Affidavit in Support of Entry of Default Judgment, and a Supplemental Exhibit to Amended Affidavit filed at Docket Nos. 224, 225, and 226.  The Affidavits state that Defendant Pichler failed to produce the requisite documents by the deadline set by the Court and that a Default Judgment should be entered pursuant to the July 7, 2014, Order.  Accordingly, the Court entered a Judgment Declaring Title to Real Property dated July 15, 2014, filed at Docket No. 227.  Additionally, Proposed Findings of Fact and Conclusions of Law were filed by the Plaintiffs on July 25, 2014, at Docket No. 228.  As elaborated later in this Report and Recommendation, many of the facts found by

9

the Court came from the Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

Upon closer examination, this Court now has a serious concern as to whether the entry of the July 15, 2014, Default Judgment was appropriate. First, the Court notes that the July 7, 2014, Order was submitted pursuant to a document entitled "Notice of Submission of Order" that was entered by stipulation of the parties. This Order is not consistent with the June 18, 2014, Opinion of the Court. The Order attached to the Notice of Submission of Order found at Docket No. 213 filed on the same day, July 3, 2014, is consistent with the June 18, 2014, Opinion of the Court, but has not been submitted for entry for reasons unknown to this Court. The June 18, 2014, Opinion of the Court severely limited the scope of the production of documents in the Trial Subpoena to those documents listed in Paragraph 9 of the Final Pre-Trial Order, as well as allowed for the production of those documents used to refresh a witness' recollection. A closer review of the Affidavit and amendments and supplements to the Affidavits leads this Court to conclude that an unanswered issue remained as to whether Defendant Pichler had submitted the documents consistent with this Court's Opinion. Moreover, the Court would conduct a further inquiry, if allowed, as to the reason for the difference in the July 7, 2014, Order and the Court's June 18, 2014, Opinion.

Next, the Court has serious concerns as to whether the actual documents that Plaintiffs' counsel claimed were not produced were ever indeed requested. At this time, this Court is unable to determine exactly what documents were produced by Defendant Pichler and whether those documents were ever requested. Moreover, this Court is not satisfied that the Affidavit, Amended Affidavit, and Supplement to Affidavits, clearly demonstrate that Defendant Pichler failed to produce the documents that were ordered by the Court even under the more expansive July 7, 2014, Order. Until further investigation and presentation of proofs is allowed, this Court finds that the likelihood of significant error in the Affidavit, Amended Affidavit, and Supplement to Affidavit exist that compels this Court to recommend that further argument and evidence be introduced to address whether Defendant Pichler was in default of this Court's Order. Second, the Court reports and recommends to the District Court that further inquiry and investigation be made as to why the Order attached to the Notice of Presentment dated July 3, 2014, filed at Docket No. 213 was not submitted to this Court for signature.

The District Court subsequently dismissed Ms. Pichler's appeal and the Sixth Circuit Court of Appeals dismissed Plaintiffs' Appeal of Denial of Motion for Reconsideration so this case returned to this Court.

The Court held a series of status conferences and hearings, primarily directed to Ms. Pichler's requests for relief. In particular, the Court held hearings on April 26, 2017 and June 21,

10

2017 where all counsel and parties appeared and argued their positions.  By June 2017, it was apparent that a physical examination of the postal box was necessary.

On September 20, 2017, Mr. Tindall was disbarred.

Accordingly, the Court set a status conference for October 11, 2017 and directed parties to appear.  Counsel for the parties appeared, but Ms. Duggan did not.  The Court was informed that Mr. Tindall was having trouble communicating with her, presumably because she needed to attend to her ailing mother.  Mr. Tindall did not appear either.

On October 17,  2017, Mr. Toll produced the postal box and the Court inspected the postal box.  After this inspection, the Court found and concluded that it was impossible for Mr. Tindall to have reviewed any documents in the postal box because the hole was too small and there were no other signs that the box was opened.  The Court then found and concluded that the affidavits supplied by Mr. Tindall were inaccurate such that the default judgment should be set aside.  As stated in an Amended Order dated November 13, 2017:

### Amended Order Re: Defendant Michelle Pichler's "Motion to Set Aside Default Judgment Declaring Title to Real Property for Fraud on the Court and to Dismiss Adversary Complaint with Prejudice and Award Costs and Attorney Fees"[1]

This matter came before the Court on Defendant Michelle Pichler's "motion to set aside default judgment declaring title to real property for fraud on the court and to dismiss adversary complaint with prejudice and award costs and attorney fees," Doc 296, in which Ms. Pichler claimed that the Plaintiffs' attorney, Michael E. Tindall, perpetrated a fraud on the court. The Court, having conducted previous hearings and conferences, as well as a hearing on October 11, 2017, and having reviewed the evidence, and in particular, having closely examined a box described in this Order which Mr. Tindall referenced in previous hearings and conferences, the record, the applicable law, and the submissions of the parties, directed Defendant's counsel to prepare and submit an Order which makes these findings of fact and conclusions of law, which are in addition to the findings of fact and conclusions of law stated on the record at the October 11, 2017 hearing.

---

[1] This Order constitutes the findings of fact and conclusions of law of the Court under Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

1. This case arises out of an adversary proceeding filed by the Plaintiffs—the Chapter 7 trustee Michael A. Mason[2] and state court judgment creditor Barbara Duggan—against Defendants Michelle Pichler and Edward Linck alleging that the Debtor Christopher D. Wyman made a preferential transfer to Ms. Pichler under 11 U.S.C. § 547, and alleging that Mr. Wyman made certain fraudulent transfers to Ms. Pichler or Mr. Linck or both in violation of 11 U.S.C. § 544 and Michigan's enactment of the Uniform Fraudulent Transfer Act,[3] Mich. Comp. Laws §§ 566.31–566.43. *See* Adv. Compl., Doc 1.

2. At all times, Michael E. Tindall (P29090) was the Plaintiffs' attorney of record.[4] *See* Am. Aff. in Supp. of Entry of Default J. ¶ 1, Doc 225.

3. On April 29, 2014, the Plaintiffs served Ms. Pichler with a subpoena to appear and testify on June 24, 2014. *See* Ex. B to Def. Michelle Pichler's Mot. to Quash Subpoena, Doc 163-1. In the subpoena, the Plaintiffs directed Ms. Pichler to bring with her "all bank statements and cancelled checks for all accounts over which [she] had signature authority, no matter the name on the account, for the years 2008 through the current date." *Id.*

4. On May 16, 2014, Defendant Pichler moved to quash the subpoena because "[t]he demand for production of documents is, in essence, an attempt by Plaintiffs to circumvent the Order regarding discovery." Def. Michelle Pichler's Mot. to Quash Subpoena, Doc 163, at p. 4.

5. On June 18, 2014, the Court held a hearing on Ms. Pichler's motion to quash. At the conclusion of the hearing, the Court made this bench ruling:

> To the extent that the subpoena requests that the defendants produce documents that fit squarely within Paragraph 9 of the final pre-trial order,[5] the Court will deny the motion to quash and direct that the

---

[2] On August 26, 2014, the United States Trustee gave notice in the main bankruptcy case of the appointment of Samuel D. Sweet as the successor trustee in this matter due to the retirement of Michael A. Mason. *See* Notice to Creditors and Other Parties in Interest of Trustee Conflict, Appointment of New Trustee, Doc 149, Case No. 12-32264-dof.

[3] Effective April 10, 2017, the Michigan Uniform Fraudulent Transfer Act was amended and renamed the Michigan Uniform Voidable Transactions Act. *See* Mich. Comp. Laws § 566.45(1).

[4] On September 21, 2017, the Attorney Discipline Board for the State of Michigan issued a Notice of Disbarment (Pending Review) disbarring Mr. Tindall from the practice of law effective September 20, 2017. *See* Notice of Disbarment (Pending Review), available at http://www.adbmich.org/coveo/notices/2017-09-21-14n36.pdf.

[5] Paragraph 9 of the final pretrial order provided in relevant part: "to the extent this Court determines that the admissions of Debtor and Defendants coupled with the attachments [Exhibit 5] to the Complaint do not establish

12

defendants do exactly that if need be [sic] they need to bring those documents. I'm certain from what I understand of the case that virtually all these documents have already been produced, but if there are more documents, then so be it.

Hr'g Tr. 66:5–12, June 18, 2014, Doc 248. The Court directed Mr. Tindall to prepare an order consistent with the Court's bench ruling *See id.* at 69:16–19.

6. On July 1, 2014, during a telephonic status conference, Mr. Tindall advised the Court he had not received any bank statements or documents from Defendant Pichler and requested the Court to enter a default judgment. *See* Hr'g Tr. 2:21–23, July 1, 2014, Doc 250. The Court made this bench ruling:

With this record the Court edging ever closer to that default judgment, will indicate the following. First off, that the Court will set a deadline of July 14, 2014 at the close of business, that is 5:00 eastern daylight savings time for the documents to be delivered to Mr. Tindall.

If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment.

\* \* \*

But with this record, Mr. Tindall has waited long enough, he's entitled to have the documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment.

*Id.* at 6:12–20, 7:6–10.

7. On July 3, 2014, Mr. Tindall filed a "notice of submission of order" regarding the July 1, 2014 bench ruling. *See* Notice of Submission of Order, Doc 212. Contrary to the Court's June 18, 2014 bench ruling, Mr. Tindall submitted an order requiring Defendant Pichler to "produce all bank records described in Plaintiffs' trial subpoena …," *id.* at p. 4, instead of just the documents in paragraph 9 of the final pretrial order, which was the Court's June 18, 2014 bench ruling. *See* June 18, 2014 Hr'g Tr. 66:5–12, Doc 248.

---

both lack of consideration and insider status, Plaintiffs will present the account statements of Debtor's 'corporate' account at FNBH and Pichler's account(s) at TCF." Proposed Joint Final Pretrial Order ¶ 9, Doc 168, at p. 8.

8. On the same day, Mr. Tindall also submitted a notice of submission of order addressing the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. *See* Notice of Submission of Order, Doc 213. The proposed order attached to the notice of submission stated the following regarding Defendant Pichler's motion to quash:

> **IT IS FURTHER ORDERED** that Defendant Pichler's MOTION TO QUASH TRIAL SUBPOENA, DE 163, is **GRANTED** in part and **DENIED** in part for the reasons stated on the record, and, Defendant Pichler shall produce all documents described in No. 9 of the FINAL PRE-TRIAL ORDER.

*Id.* at pp. 3–4. No party objected to this proposed order, but Mr. Tindall did not submit a copy for the Court to sign unlike he did with the proposed order attached to the Notice of Submission found at Docket No. 212.

9. On July 7, 2014, the Court entered the order regarding default judgment attached to the Notice of Submission found at Docket No. 212. *See* Order Re: Default J., Doc 214. This order is not consistent with the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. The order attached to the Notice of Submission of Order found at Docket No. 213 filed on July 3, 2014 is consistent with the Court's June 18, 2014 bench ruling, but Mr. Tindall did not submit it for entry for reasons unknown to the Court. The Court's June 18, 2014 bench ruling severely limited the scope of the production of documents in the trial subpoena to those documents listed in paragraph 9 of the final pre-trial order, and allowed for the production of those documents used to refresh a witness' recollection. *See* June 18, 2014 Hr'g Tr. 66:5–67:25, Doc 248.

10. On July 14, 2014, Defendant Pichler produced all requested bank records to Mr. Tindall before the 5:00 p.m. deadline in the Court's July 7, 2014 order regarding default judgment. *See* Certificate of Service, Doc 222. Because Defendant Pichler could not find a physical address to hand-deliver the bank records to Mr. Tindall,[6] Defendant Pichler asked her former attorney Mr. Brauer[7] to email the bank records to Mr. Tindall, which he did at 1:00 p.m. *See* Certificate of Service, Doc 220; Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3. Among other documents, Mr. Brauer transmitted the following bank records to Mr. Tindall on behalf of Defendant Pichler:

- CD Wyman Contractors [CONTRACTORS 20140619130643111.pdf]
  Account Ending 1012
  June 29, 2007 through May 31, 2012 [Doc 296-6]

---

[6] Mr. Tindall had only a P.O. Box listed in his filings and with the State Bar of Michigan.

[7] On July 11, 2014, the Court issued an order granting attorney David Brauer's motion to withdraw as Defendant Pichler's attorney. *See* Order for Withdrawal of Counsel, Doc 219.

14

- Its Your Lawn Services [LawnServices.pdf]
  Account Ending 4287
  June 29, 2007 through March 31, 2009[8] [Doc 296-6]

- Michelle Jean Pichler—Personal [MichellePersonal.pdf]
  Account Ending 2707
  June 19, 2007 through May 20, 2014 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 12 11 thru 2 13 MJP.pdf]
  Account Ending 5502
  December 30, 2011 through February 28, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2 13 thru 9 13 MJP.pdf]
  Account Ending 7014
  February 28, 2013 through September 30, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2014 MJP.pdf]
  Account Ending 5834
  September 30, 2013 through June 30, 2014[9] [Doc 296-6]

11. In addition, Defendant Pichler hand-delivered the requested bank records to the U.S. Post Office in Mount Clemens where Mr. Tindall maintained his post office box. *See* Certificate of Service, Doc 222. According to the receipt produced by Ms. Pichler, she "mailed" them at 1:46 p.m. from that post office to Mr. Tindall's post office box at the same post office. *See* July 14, 2014 Receipt from Mount Clemens Post Office, Doc 305-3. Ms. Pichler also purchased Signature Confirmation™ for the package. *See id.* The USPS's tracking records reflect that the post office made the package available for pickup by Mr. Tindall on July 14, 2014 at 1:49 p.m. *See* USPS Tracking Information, Doc 305-4.[10] After delivering

---

[8] (1) The August 29, 2008 statement states that it is for the statement period of May 31, 2008 through August 29, 2008. (2) The December 31, 2008 statement states that it is for the statement period of October 1, 2008 through December 31, 2008. (3) The February 27, 2009 statement states that it is for the statement period of January 1, 2009 through February 27, 2009. (4) The March 31, 2009 statement is the account closing statement.

[9] (1) The March 31, 2014 statement states that it is for the statement period of January 1, 2014 through March 31, 2014. (2) The June 30, 2014 statement states that it is for the statement period of April 1, 2014 through June 30, 2014.

[10] The Court may take judicial notice of the information on a government website, because it is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Whiting v. United States*, No. CV 15- 01472-AB (DTBx), 2016 WL 3946920, at *2–3 (C.D. Cal. June 21, 2016) (taking judicial notice of tracking information on U.S. Postal Service Official Tracking webpage); *Johnson v. Toys R Us, Inc.*, No. 11-1431, 2012 WL 2282218, at *3 (C.D. Ill. June 15, 2012) (taking judicial notice of tracking information on USPS website); *El-Aheidab v. Citibank (South Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at *4 n.3 (N.D. Cal. Feb. 15, 2012) (taking judicial notice of tracking information on U.S. Postal Service Track & Confirm website); *Narog v. New York Community Bank*, No.

15

the documents to Mr. Tindall's post office box in Mount Clemens, Ms. Pichler filed a certificate of service of the bank records at 3:41 p.m. on July 14, 2014. See Certificate of Service, Doc 222. The certificate of service attached the tracking number for the package, *see id*. at p. 3, which would have allowed Mr. Tindall to determine through www.usps.com that the package was available for pickup on July 14, 2014. *See* USPS Tracking Information, Doc 305-4.

12. After the 5:00 p.m. deadline on July 14, 2014, Mr. Tindall filed an "affidavit in support of entry of default judgment as provided in this Court's order DE 214." Aff. in Supp. of Entry of Default J., Doc 224. At 6:47 p.m., Mr. Tindall filed an "amended affidavit in support of entry of default judgment as provided in this Court's order DE 214." Am. Aff. in Supp. of Entry of Default J., Doc 225. Both affidavits request entry of default judgment against Defendant Pichler based on her alleged noncompliance with the Court's July 7, 2014 order regarding default judgment. In the amended affidavit, which is substantially similar to the original affidavit, Mr. Tindall made these representations to the Court to support the Plaintiffs' request for entry of default judgment against Defendant Pichler:

> • "He is familiar with the records, filings, pleadings and associated mailings connected with the various acts, actions and activities connected with this matter; and, as the attorney principally responsible for the matter, receives all mailings and other filings made in connection with it, on behalf of TINDALL LAW." Doc 225, at ¶ 2; *accord* Doc 224, at ¶ 2.

> • "On July 14, 2014, at approximately 1PM, while absent from the office, the undersigned received – by email transmission, *See Exhibit 4* - various documents from Attorney Brauer, despite the fact that he no longer represents Pichler and has not represented her for 3 days. *See, Exhibit 3*." Doc 225, at ¶ 5; *accord* Doc 224, at ¶ 5.

> • "Upon return to the office, the undersigned examined the documents transmitted. The documents transmitted DO NOT comply with the order of this Court, or, with Plaintiff's [sic] subpoena in the following material respects." Doc 225, at ¶ 6; *accord* Doc 224, at ¶ 6.

> • "The documents transmitted DO NOT include Ms. Pichler's personal checking account or her personal savings account[.]" Doc 225, at ¶ 6.B; *accord* Doc 224, at ¶ 6.B.

> • "Based on the statements of CD WYMAN CONTRACTORS provided, the amounts fraudulently transferred from Wyman to Pichler, *throughout* the

---

Civ. S-10-3265 JAM CKD PS, 2011 WL 4591219, at *1 n.1 (E.D. Cal. Sept. 30, 2011) (taking judicial notice of U.S. Postal Service "Track and Confirm" search results); *Perez v. Ahlstrom Corp.*, No. 10-cv-1299, 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) (taking judicial notice of receipt from the United States Postal Service's website confirming delivery date of letter).

16

years 2007 through 2012 is $ 105, 209.27." Doc 225, at ¶ 6.C; *accord* Doc 224, at ¶ 6.C.

• "Neither Defendant Pichler, nor attorney Brauer, have complied with the subpoena or the Order of this Court[.]" Doc 225, at ¶ 7; *accord* Doc 224, at ¶ 7.

13. On July 15, 2014, at 3:43 p.m., Mr. Tindall filed a "supplemental exhibit to amended affidavit of default DE 225." Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. In the supplemental exhibit, Mr. Tindall represented to the Court that "[o]n July 15, 2014 … a package from Michelle Pichler was received. Upon examination, the materials contained therein DO NOT comply with this Court's Order, DE 214[.]" *Id.* Mr. Tindall further represented to the Court that:

• "No cancelled checks are included for any account," *id.* at ¶ 1;

• "No cancelled checks, or images, are included for ANY other account," *id.* at ¶ 2; and

• "Random months are missing for each account included," *id.* at ¶ 3.

14. On July 16, 2014,[11] in reliance on Mr. Tindall's representations to the Court in his affidavit, Doc 224, amended affidavit, Doc 225, and supplemental exhibit, Doc 226, the Court entered a judgment declaring title to real property against Defendant Pichler. *See* J. Declaring Title to Real Property, Doc 227.

15. On August 7, 2014, the U.S. Postal Service returned the package Defendant Pichler hand-delivered to the Mount Clemens Post Office on July 14, 2014—the same package Mr. Tindall says he "received" and "examin[ed]" on July 15, 2014, see Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226—to Defendant Pichler as "unclaimed."[12] *See* Photograph of Unclaimed Package, Doc 305-5; *see also* USPS Tracking Information, Doc 305-4.

---

[11] Although the Court signed and filed the judgment on July 15, 2014, the Clerk entered it on the docket on July 16, 2014. See *Faragalla v. Access Receivable Mgmt. (In re Faragalla)*, 422 F.3d 1208, 1210 (10th Cir. 2005) ("The signing of the order or judgment by the judge does not constitute an 'entry' by the judge. The entry occurs when it is noted on the docket and thereby becomes pubic."); *see also In re Henry Bros. P'ship*, 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997) (discussing the meaning of "filed," "signed," and "entered").

[12] According to the Glossary of Postal Terms (Publication 32) effective July 2013, available at https://about.usps.com/publications/pub32.pdf, "unclaimed mail" means "[m]ail with or without a Special Service that is not claimed by the addressee, or mail that becomes dead at the last office of address and cannot be delivered or forwarded." *See also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/507.htm, Exhibit 1.4.1 (indicating that the reason for nondelivery of mail endorsed "unclaimed" is that the "[a]ddressee abandoned or failed to call for mail").

## Conclusions of Law

16. The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and E.D. Mich. LR 83.50(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (H).

17. The Court has authority to grant the relief requested under Rules 54(b) and 60(d)(3) of the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure under Rules 7054(a) and 9024, and under its inherent power under 11 U.S.C. § 105(a).

18. A judgment's freedom from fraud is a matter of "vast public importance" that "may always be the subject of further judicial inquiry." *Root Ref. Co. v. Univ. Oil Prods. Co.*, 169 F.2d 514, 522 (3d Cir. 1948). "There is an irrefragable linkage between the courts' inherent powers and the rarely-encountered problem of fraud on the court. Courts cannot lack the power to defend their integrity against unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989); *see also Halbert v. Taunt (In re M.T.G., Inc.)*, 291 B.R. 694, 700 (E.D. Mich. 2003) (quoting *Aoude* with approval).

19. "The federal courts have inherent power, independent of any authority under Rule 60(b), to vacate orders obtained by fraud upon the court, and to order other appropriate relief." *In re M.T.G., Inc.*, 366 B.R. 730, 753 (Bankr. E.D. Mich. 2007), *aff'd*, 400 B.R. 558 (E.D. Mich. 2009); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("the inherent power … allows a federal court to vacate its own judgment upon proof that a fraud has been practiced upon the court"). Thus,

> This Court has inherent authority, and indeed a duty, to consider whether there has been a fraud on the court, and if so, to order an appropriate remedy, whenever such a fraud comes to the Court's attention. This is so regardless of who brings it to the Court's attention, and whether the party alleging fraud on the court has clean hands or not.

*In re M.T.G., Inc.*, 366 B.R. at 754.

20. The Sixth Circuit identified the elements of fraud on the court as consisting of conduct: (1) on the part of an officer of the court; (2) that is directed to the "judicial machinery" itself; (3) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) that is a positive averment or is concealment when one is under a duty to disclose; and (5) that deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993); a*ccord Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009); *In re M.T.G., Inc.*, 366 B.R. at 748. Defendant Pichler must prove the existence of fraud on the court by clear and convincing evidence. *See Carter*, 585 F.3d at 1011–12.

18

21. Applying traditional summary judgment principles to the pending motion,[13] and based on the undisputed facts, the Court now concludes that the "Judgment Declaring Title to Real Property," Doc 227, was obtained by a fraud on the court committed by Mr. Tindall, acting as counsel for the Chapter 7 trustee and Ms. Duggan. This order benefitted the Plaintiffs and was entered based on Mr. Tindall's filings. Because this judgment was obtained by fraud on the court, it will be vacated.

### A. "On the part of an officer of the court"

22. The first element to establish fraud on the court requires conduct on the part of an officer of the court. A bankruptcy trustee is an officer of the court. I*n re Michelson*, 141 B.R. 715, 727 (Bankr. E.D. Cal. 1992); *see also In re M.T.G., Inc.*, 366 B.R. at 749; *In re Vazquez*, 325 B.R. 30, 38 (Bankr. S.D. Fla. 2005); *In re Vebeliunas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999). An attorney is also an officer of the court. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *Taunt v. Vining (In re M.T.G., Inc.)*, 400 B.R. 558, 566 (E.D. Mich. 2009); *Eastern Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008).

23. Misrepresentations by an attorney, made to the court, to influence the court's decision, are the very essence of fraud on the court. *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Virgin Islands Hous. Auth. v. David*, 823 F.2d 764, 767 (3d Cir. 1987); *Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 (S.D.N.Y. 1986). "As an officer of the court, every attorney has a duty to be completely honest in conducting litigation.… And when he departs from that standard in the course of a case, he perpetrates fraud upon a court." *Demjanjuk*, 10 F.3d at 352; *accord H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); *Eastern Fin. Corp.*, 258 F.R.D. at 85 ("An attorney is an officer of the court, and owes the court judiciary [sic] duties and loyalty."); *Trehan*, 63 B.R. at 1007 n.8 ("An attorney is an officer of the court and owes the court fiduciary duties and loyalty. When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court.").

24. Here, both the trustee and Mr. Tindall are officers of the court. Because Mr. Tindall prepared, signed, and submitted the affidavits, *see* Docs 224 and 225, and the supplemental exhibit, *see* Doc 226, as attorney for the Plaintiffs, Defendant Pichler has established the first element of fraud on the court.

---

[13] For a detailed discussion of these summary judgment principles, *see* Op. Re: Mots. for Summ. J., Doc 66, pp. 3–4.

### B. "That is directed to the 'judicial machinery' itself"

25. The second element is that the fraud is directed to the "judicial machinery" itself. Here, Mr. Tindall directed his fraud at the Court itself to misrepresent that Defendant Pichler failed to comply with its July 7, 2014 order, *see* Order Re: Default J., Doc 214, warranting entry of default judgment for his clients. Mr. Tindall intended his affidavits and supplemental exhibit to influence the Court's decision-making process. Mr. Tindall knew, based on the Court's statements on July 1, 2014, that the Court would enter a default judgment for Mr. Tindall's clients if he filed an affidavit stating that Defendant Pichler violated the Court's order. *See* Hr'g Tr. 6:12–13, Doc 250 ("With this record the Court edging ever closer to that default judgment"); *id.* at 6:17–20 ("If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment."); *id.* at 7:6–10 ("But with this record, Mr. Tindall has waited long enough, he's entitled to have the documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment."). Mr. Tindall "surely understood that his actions, if successful, would improperly influence … the court," *United States v. Banum*, 32 F. Supp. 2d 642, 643 (S.D.N.Y. 1999), and "threaten to interfere with the rightful decision of the case," *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Defendant Pichler has thus established the second element of fraud on the court, because the conduct was "directed to the 'judicial machinery' itself," rather than merely directed at a private party.

### C. "That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth"

26. The third element requires that the representation be intentionally false, willfully blind to the truth, or is in reckless disregard for the truth. Here, Mr. Tindall filed two affidavits "in support of entry of default judgment as provided in this Court's Order DE 214" and a "supplemental exhibit" that represented to the Court that Mr. Tindall examined the documents produced by Defendant Pichler and determined that she violated the Court's order, Order Re: Default J., Doc 214, even though she complied. Mr. Tindall even represented to the Court that Defendant Pichler failed to produce the statements for her personal checking and savings accounts, even though exhibit 4 to his original affidavit shows otherwise.[14] *See* Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3.

27. Further, Mr. Tindall lied to the Court in his supplemental exhibit, where he stated he reviewed the documents Defendant Pichler mailed to him even though,

---

[14] While Mr. Tindall has subsequently claimed at various times that he could not open one or more attachments to the email sent by Mr. Brauer, he never sent an email to Mr. Brauer to that effect, let alone mentioned his inability to open the documents in his affidavits, and thus should not be now heard to claim otherwise.

according to U.S. Post Office records, he never received, let alone opened, the package.[15] *See* USPS Tracking Information, Doc 305-4. In reality, the U.S. Postal Service returned the package to Defendant Pichler "unclaimed." *See* Photograph of Unclaimed Package, Doc 305-5. These material representations were intentionally false, and Mr. Tindall knowingly made them to induce the Court to enter a default judgment against Defendant Pichler.

28. Even if not intentionally false, Mr. Tindall made these representations in reckless disregard for the truth. "In *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008), the Sixth Circuit held that an affidavit prepared by an affiant, that does not accurately reflect the facts known to him at the time the affidavit is sworn, evidences a reckless disregard for the truth." *Taunt*, 400 B.R. at 567. Here, when Mr. Tindall signed the affidavits and the supplemental exhibit, he affirmatively misrepresented Defendant Pichler's compliance with the Court's July 7, 2014 order, Order Re: Default J., Doc 214, and failed to honestly disclose what Defendant Pichler actually produced even though he claimed to have reviewed the production before filing his affidavits and supplemental exhibit. *See* Aff. in Supp. of Entry of Default J., Doc 224, at ¶ 6; Am. Aff. in Supp. of Entry of Default J., Doc 225, at ¶ 6; Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. At a minimum, Mr. Tindall acted with reckless disregard for the truth. Accordingly, Defendant Pichler has established the third element of fraud on the court

### D. "That is a positive averment or is concealment when one is under a duty to disclose"

29. The fourth element of fraud on the court requires a positive averment or a concealment when one is under a duty to disclose. Here, Mr. Tindall made several positive averments to the Court in his affidavits, Docs 224 and 225, and the supplemental exhibit, Doc 226. These positive averments were false. Some of the positive averments were directly contradicted by exhibit 4 to the original affidavit, see Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3, and by the records of the U.S. Postal Service, *see* USPS Tracking Information, Doc 305-4. These filings

---

[15] Given that Ms. Pichler purchased the Signature Confirmation™ service for this package, it is highly unlikely that Mr. Tindall received or reviewed the package. According to the Post Office Retail Operations Handbook (Handbook PO-209), effective October 1, 2011, available a https://www.apwu.org/sites/apwu/files/resource-files/PO209%20Retail%20Operations%20Handbook%2010-_12%20%28979%20KB%29.pdf, "Items that require a signature for delivery may not be opened or given to the recipient before the recipient signs and legibly prints his/her name on PS Form 3849, *Delivery Notice/Reminder/Receipt* (and return receipt, if applicable), and returns the receipt(s)." *Id.* at § 6-6.3, p. 26; *see also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/508.htm, 1.1.7(b) (stating that "[t]he mailpiece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee"). The tracking information produced by Defendant Pichler does not reflect that Tindall signed for, let alone received the package. "[A] presumption of regularity attaches to the actions of Government agencies," *United States Postal Service v. Gregory*, 534 U.S. 1, 10 (2001), and "[p]ostal employees are presumed to discharge their duties in a proper manner." *Charlson Realty Company v. United States*, 181 Ct. Cl. 262, 384 F.2d 434, 442 (Ct. Cl. 1967); *see also Henderson v. Carbondale Cola & Coke Co.*, 140 U.S. 25, 37 (1891); *Boerner v. United States*, 117 F.2d 387 (2d Cir. 1941).

21

violated Fed. R. Civ. P. 11(b), as incorporated by Fed. R. Bankr. P. 9011,[16] and Mich. Prof'l Conduct R. 3.3,[17] as incorporated by E.D. Mich. LR 83.20(j). Mr. Tindall's "fraudulent statements to the [bankruptcy] court are particularly disturbing because he is an attorney and as such, an officer of the court obliged to act forthrightly at all times." *Southerland v. Cnty. of Oakland*, 77 F.R.D. 727, 733 (E.D. Mich. 1978), *aff'd sub nom. Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980). Accordingly, Defendant Pichler has established the fourth element of fraud on the court.

### E. "That deceives the court"

30. The final element of fraud on the court is that the conduct actually deceived the court and subverted the judicial process. "In cases where a party brings a dispositive motion on an *ex parte* basis, here seeking the extraordinary relief of a default judgment, the normal benefits of the adversary system are absent and a judge must rely on the representations of parties and their counsel, serving as officers of the court." *RCI HV, Inc. v. TransTec (RC) Inc.*, No. 02-cv-4307, 2004 WL 1197246, at *12, 2004 U.S. Dist. LEXIS 9810, at *33 (S.D.N.Y. May 28, 2004). Here, the Court relied on the representations made by Mr. Tindall—as an officer of the court—that Defendant Pichler violated the Court's July 7, 2014 order requiring her to produce the bank records to Mr. Tindall by 5:00 p.m. on July 14, 2014. *See* Order Re: Default J., Doc 214. Even though Defendant Pichler complied with the Court's June 18, 2014 bench ruling and July 7, 2014 order, Mr. Tindall represented to the Court that her production did not comply. If the Court knew that Defendant Pichler produced all the TCF bank statements responsive to paragraph 9 of the final pretrial order, the Court would not have entered the requested default judgment. Accordingly, Ms. Pichler has established that Mr. Tindall committed fraud on the court by clear and convincing evidence.

---

[16] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[17] Mich. Prof'l Conduct R. 3.3(a) provides that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;" or "(3) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Similarly, Mich. Prof'l Conduct R. 3.3(d) provides that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts that are known to the lawyer and that will enable the tribunal to make an informed decision, whether or not the facts are adverse." *See also In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) ("The duty of candor applies not only to the duty to disclose material information related to the merits of a matter, but also to 'facts relating to the management of the case.' A failure to disclose may constitute a breach of an attorney's duty of candor."); *In re Burton*, 442 B.R. 421, 459, 460 (Bankr. W.D.N.C. 2009) ("As officers of the court, attorneys are required to act with honesty;" "[a]s any attorney knows, an affirmative statement is not necessary to create a misrepresentation. Where there is a duty to speak, silence can also be a misrepresentation.").

### Conclusion

31. For the reasons stated above and stated on the record at the October 11, 2017 hearing, the Court concludes by clear and convincing evidence that Mr. Tindall committed a fraud on the court in obtaining the "Judgment Declaring Title to Real Property," Doc 227, and that judgment must be vacated and set aside. The Court grants the motion of Defendant Pichler to the extent of vacating the "Judgment Declaring Title to Real Property," Doc 227, and setting aside any default entered against her. The Court will consider the appropriateness of the additional relief that Ms. Pichler sought in her motion at a later date.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the "Judgment Declaring Title to Real Property," Doc 227, is **VACATED** and **SET ASIDE** for fraud on the court by attorney Michael E. Tindall;

**IT IS FURTHER ORDERED** that Defendant Michelle Pichler's obligation to pay $225 per month to the Trustee on or before the last day of each month in accordance with the Court's September 25, 2014 "Order: (1) Granting Motion of Defendant Michelle Pichler for Stay Pending Appeal (#235) With Conditions; (2) Denying Plaintiff's Ex Parte Motion to Dissolve Motion to Stay (Docket # 239); and (3) Deeming the Court's Order to Show Cause (Docket # 275) Dissolved," Doc 301 (the "September 25, 2014 Order"), is **TERMINATED UNTIL FURTHER ORDER OF THE COURT.**

**IT IS SO ORDERED.**

Since Ms. Duggan did not appear on October 11, 2017, the Court held another hearing on October 31, 2017 and directed Ms. Duggan to appear. She did and advised the Court she wanted to continue this case but needed 60 days to retain an attorney. The Court granted her request and set a deadline for her to have an attorney file an appearance. An attorney did not file an appearance by the January 2, 2018 deadline agreed to by Ms. Duggan and set by the Court, so the Court set another hearing directing Ms. Duggan to appear on January 24, 2018 and explain why she had not retained an attorney. She did not appear, but the parties reported the matter as settled. That settlement required Ms. Pichler to transfer the 1011 East Jones Property to the Chapter 7 Trustee, essentially granting Plaintiffs the relief sought in the Complaint. By operation of law, Ms. Duggan's interest in this property remained and was not adversely affected.

23

Mr. Sweet, the Chapter 7 Trustee, found a buyer for the 1011 East Jones Property and sought approval from this Court. By that time, Ms. Duggan retained Mr. Bejjani, who did an excellent job of representing her because he negotiated a payment of $32,288.91 to Ms. Duggan, which included her original claim amount of $28,398.53 plus interest. Mr. Tindall, being dissatisfied with this result in part because he is owed attorney fees, contested all of Mr. Sweet's actions.

Mr. Tindall now requests this Court to set aside various orders in this adversary proceedings and reopen the proceedings.

<u>Applicable Authorities</u>

**Rule 60.  Relief From a Judgment or Order.**

  **(b)  Grounds for Relief form a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

  (1) mistake, inadvertence, surprise, or excusable neglect;
  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
  (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
  (4) the judgment is void;
  (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
  (6) any other reason that justifies relief.

 **(c) Timing and Effect of the Motion.**

  **(1)  *Timing*.**  A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding.

**Rule 16.  Pretrial Conferences; Scheduling; Management**

24

**(a) Purposes of a Pretrial Conference**.  In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

    (1) expediting disposition of the action;
    (2) establishing early and continuing control so that the case will not be prorated because of lack of management;
    (3) discouraging wasteful pretrial activities;
    (4) improving the quality of the trial through more thorough preparation; and
    (5) facilitating settlement.

. . .

**(c) Attendance and Matters for Consideration at a Pretrial Conference.**

    **(1)** *Attendance*.  A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference.  If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.
    **(2)** *Matters for Consideration*.  At any pretrial conference, the court may consider and take appropriate action on the following matters;
        **(A)** formulating and simplifying the issues, and eliminating frivolous claims or defenses;
        **(B)** amending the pleadings if necessary or desirable;
        **(C)** obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;
        **(D)** Avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702;
        **(E)** Determining the appropriateness and timing of summary adjudication under Rule 56;

   . . .

        **(K)** disposing of pending motions;

   . . .

        **(P)** facilitating in other ways the just, speedy and inexpensive disposition of the action.

. . .

**(f) Sanctions.**

    **(1)** *In General.*  On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:

      **(A)** fails to appear at a scheduling or other pretrial conference;

**Rule 37**

  **(b) Failure to Comply with a Court Order.**

    . . .

    **(2)** *Sanctions Sought in the District Where the Action is Pending.*

      **(A)** *For Not Obeying a Discovery Order*.  If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
      . . .

          (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
          (iii) striking pleadings in whole or in party;
          (iv) staying further proceedings until the order is obeyed;
          (v) dismissing the action or proceeding in whole or in party;
          (vi) rendering a default judgment against the disobedient party;

<u>Analysis</u>

Mr. Tindall raises a variety of arguments that the entry of the November 13, 2017 Order violated due process.  While true on its face that an order can be vacated for lack of due process, such is not the case here.

First, the question of whether the default judgment should be set aside was raised as early as August 2014, less than a month after the default judgment was entered.  The issue percolated in this Court, the District Court, and the Sixth Circuit for years and was the detailed subject of the November 17, 2014 Report and Recommendation and the May 29, 2015 Order Regarding Defendant's Motion for Indicative Ruling.  Once the issue reached this Court after appellate rights were exhausted, this Court held at least five hearings or status conferences regarding the core issue of the propriety of Mr. Tindall's affidavits and received dozens of pleadings.  Mr. Tindall attended all of these Court proceedings except the last one, which he could have attended if he wanted.  Mr. Tindall was afforded more than adequate due process; he is just dissatisfied with the opinions of this Court.  That alone is not enough to set aside the orders as he requests and is not a basis to award any money to him.

Ms. Duggan is not entitled to relief but for different reasons.  First, she received exactly what she was entitled.  The amount in her proof of claim of $28,398.53 was paid, as well as interest.  Plus, she was represented by counsel during all of the critical stages of these proceedings.  Although her failure to retain counsel within 60 days or appear in January 2018 was noted, settlement was reached and she obtained the relief she wanted.

Rule 16 allows this Court to hold status conferences and require counsel and parties to attend.  Subsection (a) directs the Court to take action that expedites disposition of an action, establish early and continuing control, and facilitate settlement.  Subsection (c)(2)(A), (C), (E) and (K) allow the Court to formulate and simplify issues, obtain admissions and stipulations about

27

facts and documents to avoid unnecessary proof, determine the appropriateness and timing of summary adjudication, and dispose of pending motions.

All of that occurred in this proceeding, although the timespan of the case to the casual observer would suggest the Court should have taken more steps to move this case faster.  The issue of whether Mr. Tindall did inspect and examine the documents that Ms. Pichler produced before he submitted his affidavits was brought to the Court's attention shortly after the default judgment was entered against her.  The Court waited for the appellate process to complete, but during that time entered an indicative ruling.  Once the appeals were finished, the Court held hearings and conferences to address this issue.  All parties, including Mr. Tindall and Ms. Duggan, were given numerous opportunities to present their case.  Under these circumstances and with this procedural history, the Court finds and concludes that adequate and robust due process was given.

Finally, the timing of Mr. Tindall's motion is telling.  Rule 60(c) states such a motion must be filed within a reasonable time and for the motions based on Rule 60(b)(1), (2), and (3), no more than one year.  Here, Mr. Tindall requests to set aside orders entered as early as November 2017 and as late as January 2018.  He gives no reasons for this delay and has been active in related cases even after his disbarment.  The Court's Orders stood unchallenged and were not appealed.  In the meantime, parties relied on these Orders.  Other parties such as Ms. Duggan, benefitted from these Orders in that she was paid in full.  Now, over five years later, Mr. Tindall seeks to set aside and vacate these Orders.  He had ample opportunity to appeal these Orders, but did not do so.  The Court sees no reason for the delay and finds that his late request is untimely under Rule 60(c)(1).

<u>Conclusion</u>

For the reasons stated in this Opinion, the Court DENIES Mr. Tindall's Amended FRCP

60(b)(4) Motion to Vacate Order.

The Court will enter an Order consistent with this Opinion.

**Not for Publication**

**Signed on February 27, 2023**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**