# DISTRICT COURT CASE NO. 23-10171

# EXHIBIT NO: B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    CHRISTOPHER D. WYMAN
           *Debtor(s),*

CASE NO. 12-32264
CHAPTER 7
HON: D. S. OPPERMAN

_____\

MICHAEL A. MASON, US
BANKRUPTCY TRUSTEE
And STATE COURT JUDGMNT
CREDITOR BARBARA DUGGAN

           Plaintiffs

ADVERSARY NO. 12-03348

v.

MICHELLE PICHLER, a/k/a MICHELLE GENTRY;
and, EDWARD LINCK

           Defendants.

_____\

TINDALL LAW
Attorneys for TRUSTEE MASON
And Creditor B. DUGGAN
BY: MICHAEL E. TINDALL P29090
P.O. BOX 46564
MOUNT CLEMENS, MI 480436
(248) 250-8819
Direct Email: met@comcast.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served upon counsel of record herein at their respective addresses on the record on \_\_\_\_\_ 10/30 \_\_\_\_, 2017

\_\_\_ US MAIL  X  E-FILE/MAIL
\_\_\_ FAX  \_\_\_ DELIVY

MICHAEL E. TINDALL

_____\

**OBJECTION TO "REPLY" AND "SUPPLEMENTAL REPLY", DE 411 AND 412
AND OBJECTION DE 413
FILED BY ATTORNEY K. TOLL ON BEHALF OF DEFENDANT PICHLER**

Now comes Plaintiff, BARBARA DUGGAN, by and through undersigned counsel, and for this OBJECTION states:

1. On October 13, 2017, this Court issued an ORDER TO SHOW CAUSE ("SCO") directing Ms. Duggan to file a response setting forth her "standing" to be a Plaintiff in this matter, despite the fact that that issue has been repeatedly argued and decided throughout the five (5) year history of these related cases.

2. Nothing in the SCO authorized or directed any other party to respond or reply to Ms. Duggan's filing.

3. With the assistance of undersigned counsel, Ms. Duggan complied with this Court's Order filing her timely response on October 27, 2017, as ordered.

4. On October 27, 2017, Attorney K. Toll filed an unauthorized and unsolicited REPLY to Ms. Duggan's filing. DE 411

5. Again, on October 28, 2017, Attorney K. Toll filed a SUPPLEMENT to the REPLY. DE 412, and, an OBJECTION DE 413.

6. As more fully set forth below, the filings by Attorney Toll are factually false and legally misleading and inaccurate and represent an intentional effort to take advantage of a "presumably" unrepresented party and to actively mislead this Court.

7. Perhaps more significantly, as set forth below, the filings by Attorney Toll represent a "back door" attempt to improperly "expand" the scope of this Court's Order beyond the question of "standing" to include "jurisdiction", a legal issue no "presumably" unrepresented party would be competent to address, without notice and without filing a proper motion under *FRCP 12(b)(1) and Fed R. Bank 7012*. See, DE 411, n1.

8. Finally, Attorney Toll falsely accuses the undersigned of practicing law without a license and violating Fed. R. Bank 9011, by assisting Ms. Duggan in the preparation of her RESPONSE.

### BRIEF IN SUPPORT OF OBJECTION
#### I. UNAUTHORIZED PRACTICE OF LAW

State and federal systems have autonomous control over the conduct of their officers, including lawyers.[1] Federal courts retain "an absolute and unfettered power ... to admit and to discipline members of its bar **independently of and separately from admission and disciplinary procedures of ... the state courts**...."[2] Therefore, a state

---

[1] *Theard v. United States*, 354 U.S. 278, 281—282, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).
[2] *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (**Though admission to practice before a federal court is derivative from membership in a state bar, State disciplinary proceedings are not conclusively binding on a federal court.**); *In re Cook*,

Order of Discipline disbarring an attorney from practice in state courts does NOT disbar a member of a federal bar from practice in the federal courts. Therefore, undersigned counsel will appear with Ms. Duggan on October 31, 2017 to assist her and prevent counsel for any party from taking advantage of her understandable lack of legal training and familiarity with the complicated legal issues presented by this case.

EVEN IF a state discipline order were binding or effective in a federal court, Ms. Duggan is the client in this matter. All work product produced be her counsel is her property. Her responses are drawn from the numerous documents previously filed of record in this and all related matters filed on her behalf. Assisting her in locating the appropriate documents, presenting the relevant portions responsive to this Court's inquiry, and, assisting her in filing through the ECF system is not practicing law. If Mr. Toll believes differently, he should file an appropriate complaint with the proper authorities. It is not a factor in evaluating Ms. Duggan's RESPONSE.

## II.     REPLY, DE 411

According to Attorney Toll's REPLY:

1. Ms. Duggan lacks "standing" because, factually, her claims are NOT "inextricably intertwined" with Trustee Mason's avoidance rights; and, the resolution of her "claims" have no factual impact "no conceivable effect" on the administration of the bankruptcy estate or the bankrupt debtor. DE 412, PP 1-5.

2. As a matter of law, there is no "related to" subject matter jurisdiction. DE 412, P 5; DE 411, PP 1-7.

3. As a matter of law, an action for damages against a transferee, for receiving a fraudulent transfer, is not authorized by Michigan law. DE 411, n2

4. As a matter of law, her action against a transferee for damages depends on an action against the transferor. DE 411, P4.

5. As a matter of law, "**although an action for fraudulent conveyance is brought against the transferee, the fraud is the debtor's**". DE 411, P4.

6. As a matter of law, her action against a transferee, for damages, must rely on and allege "conspiracy". DE 411, PP 5-6, ns 3,4.

---

551 F. 3d 542 (6th Cir 2009); In re Squire, 617 F. 3d 461 (6th Cir 2010); In re Abrams, 521 F.2d 1094, 1101 (3d Cir.1975).

Finally, according to Attorney Toll's SUPPLEMENT:

1. As a matter of law, Ms. Duggan's Judgment Lien expired May 3, 2017, during the course of these related enforcement proceedings; Ms. Duggan failed to re-record her judgment lien; and, "**therefore her judgment is no longer secured by a perfected judgment lien against the Jones Rd. real estate.**" DE 412, P 5-6, n6.

Typically, NONE of these gratuitous arguments are supported by reference to MICHIGAN law, whether statutory or case law that define Ms. Duggan's rights. Instead, as is his wont, Mr. Toll – again – lards his REPLY and SUPPLEMENT with quotations and citations from some "hornbook" or treatise discussing cases applicable to every other state BUT Michigan. Further, Mr. Toll conceals the fact that Pichler has, already, admitted the "factual connection" to the Wyman Bankrupt estate that forms the basis for his subsequent dissertation on "supplemental" jurisdiction.

On April 22, 2013, Pichler filed DE 96 in this proceeding [one of the many times these issues have been argued]. Therein, Pichler admitted the factual predicate that Attorney Toll now denies; namely, that her rights are independent and are inextricably intertwined with Trustee Mason's avoidance rights. See, Nos. 1 and 3. Attorney Toll's representation and argument to the contrary is knowingly and intentionally false.

According to Mr. Toll, there is no "subject matter jurisdiction" over Ms. Duggan's **affirmative claims** because there is no "related to" jurisdiction. This is exactly the argument the Sixth Circuit labeled as "meritless" in *Waldman v. Stone, 683 F.3d 910 (6th Cir 2012) at 916.* Mr. Toll then declares that "**none of these cases support her position**", DE 412, P2, launches upon a dissertation based on "conspiracy" and a single bankruptcy decision by Judge Tucker discussing "**supplemental jurisdiction**". DE 412, PP 4-5; DE 411, PP 3-8. Yet, as Judge Hood recited in *Superior Contracting Group, Inc. v. Rachmale*, See, Exhibit 2, at P 3 of 4:

> "Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986). The Sixth Circuit Court of Appeals follows the test for determining "related to" jurisdiction enunciated in *Pacor, Inc. v.Higgins (In re Pacor)*, 743 F.2d 984 (3d Cir. 1984)- "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See, In re Wolverine RadioCo.*, 930 F.2d 1132, 1142 (6th Cir. 1991)."

*******************************

"Section 1334(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding." *In re Salem*, 783 F.2d at 635. When a plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334. *In re Dow Corning Corp.*, 86 F.3d 482, 492 (6th Cir. 1996) (citations omitted)."

So much for Mr. Toll's blind declaration that Ms. Duggan's authorities do not support her position.

The same can be said of Mr. Toll's equally blind declaration that "Nor does the sole case cited by Ms. Duggan, Regan v. Carrigan support her claim", DE 411 P5, n2, just before launching off on a dissertation of the law of Massachusetts. MCL 566.38(2)(a) and (3) state:

> "(a) Except as otherwise provided in this section, the creditor may recover a judgment for the value of the asset transferred, as adjusted under subsection (3), .... The judgment may be entered against either of the following:
>
> (i) The first transferee of the asset or the person for whose benefit the transfer was made.
>
> (3) If the judgment under subsection (2) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require."

MCL 566.42 provides:

> "Unless displaced by the provisions of this act, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement the provisions of this act."

Accordingly, a grantee who receives property or money without giving fair consideration to the fraudulent grantor is subject to having the conveyance set aside and also subject to any other remedies normally available to the creditor [including fraud remedies]. *Kelley v Thomas Solvent Co*, 722 F Supp 1492, 1499 (WD Mich, 1989); ) *Regan v. Carrigan*, 194 Mich App 35 (1992) (*Creditor may recover directly against a fraudulent grantee, whether or not the grantee knowingly participated in the fraudulent transaction*).

According to Mr. Toll, an action against Pichler, as a fraudulent transferee, is dependent on an action against the debtor WYMAN. Typically, this assertion is false. A fraudulent transfer claim/action is one against the fraudulent transferee/asset(s), *MCL 566.37(1)*; *Estes v. Titus*, 481 Mich 573, 751 NW 2d 493,501 (2008); the transferor need not be a party to such an action. *Regan v. Carrigan*, 194 Mich App 35 (1992) at 40 *(where a grantee knowingly participates in a fraudulent transfer, a defrauded creditor has recourse directly against that grantee)*; *Patton v. Langlay*, 50 Mich 428 (1883); *Kelly v. Thomas Solvent Co.*, 772 F. Supp 1492 (WD MI 1989)*(Transferor need not be a party to fraudulent transfer action)*; *Mather Investors, LLC v Larson*, 271 Mich App 254, 259-260; 720 NW2d 575, 578 (2006).("The plain language of the UFTA <u>does not require the creditor to join the debtor</u> alleged to have made the fraudulent transfer... Because the UFTA <u>clearly does not contain any language requiring joinder</u> of the debtor transferor, <u>we will not imply such a requirement</u>.)

Equally false is Mr. Toll's assertion that "**the fraud is the debtor's**". DE 411, PP 5-6, ns 3,4. As the US Supreme Court stated in *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1587-88 (2016):

> "Equally important, the common law also indicates that fraudulent conveyances, although a "fraud," do not require a misrepresentation from a debtor to a creditor. As a basic point, fraudulent conveyances are not an inducement-based fraud. Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration... In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance.... both the debtor and the recipient of the conveyed assets were liable for fraud even though the recipient of a fraudulent conveyance of course made no representation, true or false, to the debtor's creditor."

Finally, Mr. Toll's SUPPLEMENT falsely tells this Court that "**expiration**" of the recorded Judgment Lien means her lien is no longer perfected. MCL 566.31 provides:

> "(i) "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, **a judicial lien obtained by legal or equitable process or proceedings**, a common-law lien, or **a statutory lien**."

In *Thomas v. Dutkavich*, 290 Mich App 393, 803 NW 2d 352, 362-63, the Michigan Court of Appeals ruled that "expiration" does NOT "extinquish" a recorded Judgment Lien.

> "Our conclusion is further supported by MCL 600.2809. Under MCL 600.2809(1) through (4), a judgment lien **expires** five years after the date that it was recorded, unless the judgment itself expires beforehand, at which time the lien would also expire, or unless the lien is rerecorded, which a judgment creditor may only do once, not less than 120 days before the expiration date of the initial judgment lien.
>
> MCL 600.2809(6) addresses the extinguishment of a judgment lien, providing:
>
>> A judgment lien is extinguished when **1 or more of the following are recorded with the office of the register of deeds** where the judgment lien is recorded:
>>
>> (a) A discharge of judgment lien signed by the judgment creditor or the judgment creditor's attorney.
>> (b) A certified copy of a satisfaction of judgment that has been filed with the court that issued the judgment.
>> (c) A certified copy of a court order that discharges the judgment lien.
>> (d) A copy of the judgment debtor's discharge in bankruptcy issued by a United States bankruptcy court and a copy of the bankruptcy schedule listing the judgment debt. This subdivision does not apply if an order entered in the judgment debtor's bankruptcy case determining that the debt is nondischargeable is recorded with the register of deeds.
>
> Aside from the circumstance described in MCL 600.2809(6)(c), none of these events occurred in this case....**Accordingly, there is no statutory basis to discharge the judgment lien**".

For the reasons stated, Pichler's various attempts to attack Ms. Duggan's response(s); her "standing"; and, subject matter jurisdiction must fail.

Respectfully Submitted,
TINDALL LAW

BY: /S/ MICHAEL E. TINDALL
MICHAEL E. TINDALL P29090
For the Firm
P,O, BOX 46564
MOUNT CLEMENS,MI  480436
(248) 250-8819
Direct Email: met@comcast.net

Dated: 10/30/17

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

IN RE:

    CHRISTOPHER D. WYMAN

        Debtors

Bankruptcy Case No. 12-32264
Hon. Daniel S. Opperman
Chapter 7

---

**MICHAEL A. MASON, US BANKRUPTCY TRUSTEE AND STATE COURT JUDGMENT CREDITOR BARBARA DUGGAN,**

        Plaintiffs

v.

**MICHELLE PICHLER, a/k/a MICHELLE GENTRY; and, EDWARD LINCK**

        DefendantS.

Adversarial Case No. 12-03348
Hon. Daniel S. Opperman

---

| | |
|---|---|
| Michael E. Tindall (P29090)<br>Attorney for Creditor B. Duggan<br>P.O. Box 46564<br>Mount Clemens, MI 48046<br>(313) 638-7613<br>met@comcast.net | David W. Brauer (P41974)<br>Attorney for Defendant M. Pichler<br>515 E. Grand River Avenue<br>Howell MI 48843<br>(517) 548-1998<br>davidwbrauer@sbcglobal.net<br><br>Michael J. Olson (P56453)<br>Attorney for Defendant E. Linck<br>915 N. Michigan Ave., Suite 6<br>Howell, MI 48843<br>(517) 548-7400<br>molson@mtolaw.com |

Zichi & Brauer, P.C.
ATTORNEYS AT LAW

515 E. Grand River Ave.
Howell, Michigan 48843

(517) 548-1998

## DEFENDANT'S REPLY TO PLAINTIFF'S 28 USC 157(B)(3) COMBINED MOTION AND BRIEF TO DETERMINE CORE/NONCORE STATUS OF CLAIMS (AMENDED)

In re: Mason and Duggan v. Pichler and Linck  Case No.12-03348
Reply to Plaintiff's 28 USC 157(b)(3) Combined Motion

   NOW COMES Defendant Michelle, Pichler, by and and through her attorney David W. Brauer, of Zichi & Brauer, P.C. and in answer to Plaintiff's motion states as follows:

   1. Defendant's admit that Plaintiff did allege violation of sections 11 USC 542, 544, and 547 in their Complaint. However in further response to this paragraph the allegations are not clear and concise as to which Plaintiff is asserting exactly which cause of action. In further response to this paragraph Plaintiff admits in paragraph 3 of this motion that Plaintiff Duggan is "asserting her independent right inextricably intertwined with, and arising out of the avoidance rights asserted by Trustee Mason". As this court has already noted Plaintiff Duggan does not appear to have a statutory right to concur in the avoidance procedures of the Plaintiff Trustee as sections 11 USC 542, 544, 547, and 550 clearly state "only the Trustee" has rights under those statutes. Thus it is premature at this time for this court to rule on whether this is a core proceeding and grant the relief requested by Plaintiff in this motion.

   2. Neither admit nor deny. Please see answer to paragraph 1 above.

   3. Defendants admit that Duggan's cause of action as plead is inextricably intertwined with that of the Trustee's. Defendant denies the remained of the allegations in this paragraph. Please see answer to paragraph 1 above.

   4. Defendant's does admit that 28 USC 157(b)(3) provides that the court may on a timely motion determine whether a matter is a core or noncore proceeding under Title 11. However in further response to this paragraph Defendants allege that the requested relief in this matter is premature for the reasons set forth in Defendant's Answer to Plaintiff's Second Motion for Summary Disposition Docket No. 87. Defendant incorporates by referenced it's Answer to Plaintiff's Second Motion for Summary Disposition Docket No. 87 as though fully set forth herein. Please see also answer in paragraph 1 above.

   5. In further response to this paragraph the Plaintiff's Complaint is so vague, it is difficult to ascertain which Plaintiff is alleging which cause of action. Further Defendant Duggan does not have a cause of action under 11 USC 542, 544, 547 or 550. However please see answer to paragraph 4 above.

   6. Admitted. In further response to this paragraph it is possible this matter may be transferred to the federal district court, or the state court for further adjudication. And thus the request for relief is premature.

   7. Please see answer to paragraph 4 above.

Zichi & Brauer, P.C.
ATTORNEYS AT LAW
515 E. Grand River Ave.
Howell, Michigan 48843

In re: Mason and Duggan v. Pichler and Linck    Case No.12-03348
<u>Reply to Plaintiff's 28 USC 157(b)(3) Combined Motion</u>

8. Defendant leaves Plaintiff to its proofs. However this matter is not ripe for determination of whether it is a core or noncore proceeding at this juncture.

9. Defendant would respectfully assert that only the United States Supreme Court has the jurisdiction to change its Stern ruling. Defendant admits that the district and circuit have attempted to clarify and further interpret the Supreme Court's decision in Stern. There has been no proof of claim filed to defense counsel's knowledge which would be germane to trigger holdings of Waldman and Global. Thus under Plaintiff's interpretation this matter would be a noncore preceding. Defendant's may then seek to have the matter transferred to state court, or federal district court. However that issue is not ripe for review at this juncture.

10. Please see answer to paragraph 4 above.

11. Please see answer to paragraph 4 above.

WHEREFORE, your Defendant respectfully request this Honorable Court deny the relief sought for by Plaintiff for the reasons set forth above, enter Defendant's proposed Order denying the relief sought for by Plaintiff for the reasons set forth above, enter Defendant's proposed Order Denying the Relief Requested by plaintiff, and enter such other relief as is appropriate under the facts and circumstances at hand.

Dated: April 22, 2013    By:    /s/ *David W. Brauer*
                                 Attorney for Defendant, M. Pichler
                                 515 E. Grand River Avenue
                                 Howell, Michigan 48843
                                 517.548.1998
                                 davidwbrauer@sbcglobal.net

Zichi &
Brauer, P.C.
ATTORNEYS AT LAW

515 E. Grand River Ave.
Howell, Michigan 48843

**SUPERIOR CONTRACTING GROUP, INC., Plaintiff,**

**v.**

**AVINASH RACHMALE, Defendant.**

<u>Civil Action No. 15-11381,</u>

United States District Court, E.D. Michigan, Southern Division.

March 30, 2016.

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, ORDER TRANSFERRING ACTION, AND ORDER DESIGNATING ACTION CLOSED ON DOCKET

DENISE PAGE HOOD, Chief District Judge.

## I. BACKGROUND/FACTS

On August 22, 2014, Plaintiff Superior Contracting Group, Inc. originally filed the instant suit against Defendant Avinash N. Rachmale before the United States District Court for the Western District of Tennessee. (Doc. No. 4, W.D. Tenn. Docket) On December 31, 2014, the Honorable Samuel H. Mays, Jr. entered an order granting Rachmale's Motion to Dismiss based on improper venue and transferring the action to this District. (Doc. No. 2, Order) The action was transferred by the Western District of Tennessee Clerk to this District on April 16, 2015.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ) and is either the sole or majority shareholder of Lakeshore Engineering Services, Inc., a non-party in this action. *Id.*, ¶¶ 2, 5. On May 14, 2009, Superior Contracting and Lakeshore, at the direction of Rachmale, entered into a Mentor/Protégée Agreement, a program established by the United States Small Business Administration, to pursue work allocated for Section 8(a) contractors by the United States. *Id.*, ¶¶ 4, 6. Superior Contracting and Lakeshore, at the direction of Rachmale, entered into two joint venture entities, the Superior Contracting/Lakeshore JV, LLC and Superior Contracting/Lakeshore JV2, LLC, to pursue construction projects by the United States Army Corps of Engineers, St. Louis District. *Id.*, ¶ 7. Five Joint Venture Agreements were entered into between Superior Contracting and Lakeshore, at the direction of Rachmale, for five projects constructed by the Corps of Engineers: Keyesport, Gravity Drain Phase 1; Gravity Drain-Phase 2; Chesterfield Levee; Chesterfield Railroad Closure; and, Len Small. *Id.*, ¶ 8. All works on all the projects were completed by April 29, 2013 and the Corps of Engineers had made final payment. *Id.*, ¶ 10.

Pursuant to the terms of the Joint Venture Agreements, Superior Contracting was to receive 51% of the net profits and Lakeshore 49% of the net profits. *Id.*, ¶ 11. Overall management and construction of the projects was to be conducted by Superior Contracting, all books and records was to be maintained by Superior Contracting, and the funds were to be maintained in a joint account controlled by both Superior

SUPERIOR CONTRACTING GROUP, INC. v. RACHMALE, Dist. Court... https://scholar.google.com/scholar_case?case=5951029949099155380&...

Contracting and Lakeshore. *Id.*, ¶ 12.

After the projects were completed, Superior Contracting discovered that Lakeshore, at the direction of Rachmale, had deposited payments received from the Corps of Engineers into a joint bank account of the Joint Venture, but Superior Contracting had no signatory authority on the account. *Id.*, ¶ 13. Lakeshore, at the direction of Rachmale, later withdrew the funds in the Joint Venture bank account and deposited the funds into another bank account which was under the exclusive custody and control of Lakeshore. *Id.* Superior Contracting asserts that Lakeshore, at the direction of Rachmale, had paid itself funds from the projects exceeding the 49% net profits to which Lakeshore was entitled under the terms of the Joint Venture Agreements. *Id.* Superior Contracting further asserts that Lakeshore charged expenses to the Joint Venture that were not associated with the construction of the Joint Venture Projects. *Id.* Superior Contracting demanded Lakeshore to produce all original Project records and other financial records pertaining to the Projects, but the demand was refused. *Id.*, ¶ 14.

On August 23, 2013, Superior Contracting commenced an action against Lakeshore for breach of contract/accounting in the Chancery Court of Shelby County, Tennessee. *Id.*, ¶ 14. On May 2, 2014, Lakeshore filed a chapter 7 petition in the United States Bankruptcy Court for the District of Delaware, imposing an automatic stay of Superior Contracting's action against Lakeshore pending the bankruptcy proceeding. *Id.*, ¶ 23.

The instant action was thereafter filed in August 2014, as noted above, against the individual Rachmale alleging: Conversion, Fraud, and Intentional Misrepresentation (Count I); Piercing the Corporate Veil (Count II); and, Punitive Damages (Count III). District Judge May ordered the action transferred to this District finding this District as the proper venue for the action. (Doc. No. 2, Order)

This matter is now before the Court on Rachmale's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3), (6) and (7). A response and reply have been filed.

## II. ANALYSIS

### A. Rule 12(b)(3) Motion to Dismiss for Improper Venue

Even though Rachmale first addresses the Motion to Dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court will first address the Motion to Dismiss for Improper Venue under Rule 12(b)(3). District courts should resolve issues related to jurisdiction or venue prior to ruling on a motion to dismiss for failure to state a claim. *See Reilly v. Meffe*, 6 F. Supp. 3d 760, 764 (S.D. Ohio 2014) (citing, *Arrowsmith v. United Press Int'l*, 320 F.3d 219, 221 (2d Cir. 1963)). District Judge May's Order transferring this matter to this District does not address the issue of whether the bankruptcy court in the District of Delaware was the proper venue for this action or whether that issue was raised by the parties.

Rachmale argues that the proper venue for this action is the District Court where the bankruptcy action is pending, which is the District Court of Delaware. Superior Contracting responds that the Bankruptcy Court for the District of Delaware has simply no jurisdiction over this case since Rachmale, himself, is not the subject of the bankruptcy proceeding in that court.

Section 1334 grants jurisdiction to district courts in bankruptcy cases and proceedings and grants the

SUPERIOR CONTRACTING GROUP INC v. RACHMALE, Dist. Court... https://scholar.google.com/scholar_case?case=5951029940099155380&...

district court original jurisdiction of all cases under title 11. 28 U.S.C. § 1334(a). The district courts also have original, but not exclusive jurisdiction, of all proceedings arising under title 11, or arising in or "related to cases under title 11." 28 U.S.C. § 1334(b). "Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986). The Sixth Circuit Court of Appeals follows the test for determining "related to" jurisdiction enunciated in *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984 (3d Cir. 1984)-"whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." See, *In re Wolverine Radio Co.*, 930 F.2d 1132, 1142 (6th Cir. 1991). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* Under the "conceivable effect test," the claims are related to the bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received would have represented an asset available for distribution to the debtor's creditors. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002).

Suits between third parties which have an effect on the bankruptcy estate are "related to" a bankruptcy proceeding. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995). Section 1334(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding." *In re Salem*, 783 F.2d at 635. When a plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334. *In re Dow Corning Corp.*, 86 F.3d 482, 492 (6th Cir. 1996) (citations omitted). The degree of identity between a debtor and nondebtor codefendant is an important factor. *Id.* at 492-93.

Venue of proceedings related to bankruptcy cases filed under title 11, "may be commenced in the district court in which such [the bankruptcy case] is pending." 28 U.S.C. § 1409. Under 28 U.S.C. § 1412, a district court may transfer a case or proceeding under title 11 to another district court, in the interest of justice or for the convenience of the parties. *In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990). The party moving for change of venue bears the burden of proof and that the burden must be carried by a preponderance of the evidence. *Id.* at 1390-91. The district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy. *Id.* at 1391. The decision to transfer a case or proceeding lies within the sound discretion of the court requested to effect the transfer. *Matter of GEX Kentucky, Inc.*, 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987). The most important consideration is whether the transfer would promote the "economic and efficient administration of the estate." *Id.*

In a bankruptcy action, 28 U.S.C. § 157(b)(5) provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." 28 U.S.C. § 157(b)(5) (italics added).

Superior Contracting admits in its response brief that the Court is required "to consider the Joint Venture Agreements between Superior and Lakeshore" in reviewing the tort claims against Rachmale. (Doc. No. 9, Resp., Pg ID 222) The factual allegations in the Complaint against Rachmale expressly refer to the various agreements between Superior Contracting and Lakeshore. As admitted by Superior Contracting, in order to determine whether Superior Contracting has stated claims upon which relief may be granted as to Rachmale, the various agreements entered into between Superior Contracting and Lakeshore must be reviewed in order to determine whether Rachmale's actions were outside the agreements. The Court's review of the allegations in the Complaint finds that the claims against Rachmale are "related to" the

bankruptcy case against Superior Contracting. The outcome of this proceeding "could conceivably" have an effect of the Lakeshore Bankruptcy Estate, since the claims in this case allege damages which were wrongfully obtained by Rachmale from the Superior Contracting and Lakeshore Joint Ventures. It is clear from the Court's reading of the Complaint that Plaintiff is asserting a "joint conduct" between Lakeshore, the debtor in the bankruptcy action in Delaware, and the non-debtor Defendant Rachmale in this action. Throughout the Complaint as noted above, Superior Contracting asserts that "at the direction of Rachmale," Superior Contracting and Lakeshore entered into various joint venture agreements. Superior Contracting in fact first filed an action against Lakeshore before filing the instant action against the individual Rachmale. The Delaware Bankruptcy Court has jurisdiction over all the "joint conduct" claims against Rachmale. *In re Dow Corning*, 86 F.3d at 492. The debtor Lakeshore and the non-debtor Rachmale are one and the same, as alleged by Superior Contracting in this Complaint, and as asserted in Superior Contracting's claim to pierce the corporate veil of Lakeshore to reach Rachmale. (Doc. No. 1, Comp., ¶¶ 5 & Count II, Piercing the Corporate Veil)

In addition, Rachmale asserts that he has an indemnification agreement with Lakeshore Toltest, the parent corporation to Lakeshore. Superior Contracting argues that the claim for indemnification has nothing to do with the adjudication of the claims between Superior Contracting and Rachmale. The Sixth Circuit in *Dow Corning* found that claims for indemnification and contribution would affect the size of the estate, concluding that the bankruptcy court had jurisdiction over such claims which could potentially affect the ability of the debtor's ability to resolve its liabilities. *Dow Corning*, 86 F.3d at 494. The parent corporations of Dow Corning, in addition to other nondebtor manufacturer defendants, had asserted contribution and indemnification claims against the debtor Dow Corning, which the Sixth Circuit found were related to the Dow Corning bankruptcy action. *Id.*

Based on the above, the Court finds that the claims in this action are clearly related to the debtor Lakeshore's bankruptcy proceedings before the District of Delaware. The Court finds that under the venue statute, 28 U.S.C. § 1409, venue is proper in the United States District Court for the District of Delaware and will so transfer the instant case to that District under 28 U.S.C. § 1412. The District of Delaware court will then refer the matter to the appropriate bankruptcy court, if it so finds appropriate.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss (Doc. No. 5) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Clerk TRANSFER this action to the United States District Court for the District of Delaware.

IT IS FURTHER ORDERED that this matter is designated as CLOSED on the Court's docket.

Save trees - read court opinions online on Google Scholar.